IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:09-cv-00692-GMS |
| v. | ) | |
| | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| SAMSUNG ELECTRONICS | ) | |
| COMPANY, LTD. AND SAMSUNG | ) | |
| ELECTRONICS AMERICA INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS AND COUNTERCLAIMANTS
SAMSUNG ELECTRONICS CO., LTD.'S AND
SAMSUNG ELECTRONICS AMERICA, INC.'S
FIRST AMENDED ANSWER AND COUNTERCLAIMS**

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.
(collectively "Samsung") file this First Amended Answer and Counterclaims to the Complaint
for Patent Infringement of Plaintiff U.S. Philips Corporation ("Philips").  Samsung hereby
responds to each numbered paragraph in Philips' Complaint as follows:

**Nature of the Action**

**Complaint Paragraph 1:**

This is a civil action for infringement of a patent arising under the laws of the United
States relating to patents, including 35 U.S.C. § 281.

**Answer to Complaint Paragraph 1:**

Samsung admits that Philips' Complaint purports to allege a civil action for patent infringement under the laws of the United States related to patents, but Samsung denies any infringement.

## Subject Matter Jurisdiction

**Complaint Paragraph 2:**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this civil action arises under the laws of the United States and because this civil action arises under an Act of Congress relating to patents.

**Answer to Complaint Paragraph 2:**

Samsung admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## Parties

**Complaint Paragraph 3:**

Plaintiff U.S. Philips Corporation ("Philips") is a corporation organized and existing under the laws of Delaware, with a place of business at 3000 Minuteman Road, Andover, Massachusetts 01810.

**Answer to Complaint Paragraph 3:**

Samsung lacks sufficient information and belief to admit or deny the allegations of paragraph 3.

**Complaint Paragraph 4:**

Upon information and belief, Defendant Samsung Electronics Co., Ltd. ("Samsung Korea") is a corporation organized and existing under the laws of the Republic of Korea, having

an office and principal place of business at Samsung Main Building, 250, Taepyun-ro 2-ka,

Chung-ku, Seoul 100-742 Korea.

**Answer to Complaint Paragraph 4:**

Samsung admits that Samsung Electronics Co., Ltd. ("Samsung Korea") is a corporation

organized and existing under the laws of the Republic of Korea. Samsung denies that Samsung

Electronics Co., Ltd. has a principal place of business at Samsung Main Building, 250 Taepyun-

ro 2-ka, Chung-ku, Seoul 100-742 Korea. Samsung Electronics Co., Ltd. maintains an office and

principal place of business at Samsung Electronics Building, 1320-10, Seocho 2-dong, Seocho-

gu, Seoul 137-857, South Korea.

**Complaint Paragraph 5:**

Upon information and belief, Defendant Samsung Electronics America, Inc. ("Samsung

USA") is a corporation organized and existing under the laws of New York, having an office and

principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660.

Samsung Korea and Samsung USA shall be referred to collectively as "Samsung."

**Answer to Complaint Paragraph 5:**

Samsung admits Samsung Electronics America, Inc. ("Samsung USA") is a corporation

organized and existing under the laws of New York and having an office and principal place of

business at 105 Challenger Road, Ridgefield Park, New Jersey, 07660.

### Factual Background

**Complaint Paragraph 6:**

Upon information and belief, the CCITT Study Group VIII and the Joint Photographic

Experts Group (JPEG) of ISO/IEC JTC 1/SC 29/WG 10 prepared an international technical

standard, CCITT Recommendation T.81, which is entitled "Terminal Equipment and Protocols

for Telematic Services: Information Technology-Digital Compression and Coding of

Continuous-Tone Still Images-Requirements and Guidelines." This standard is hereinafter

referred to in this Complaint as "the JPEG Standard."

**Answer to Complaint Paragraph 6:**

Samsung is informed and believes and thereon alleges that "JPEG" or Joint Photographic

Experts Group refers to the collaborative efforts of at least two international standard-setting

organizations, the International Telegraph and Telephone Consultative Committee ("CCITT")

and the International Standards Organization ("ISO"), each of which had a subcommittee

dedicated to developing a worldwide standard for still image compression and decompression:

CCITT Study Group VIII and ISO Working Group 8, which later became Working Group 10.

Samsung is informed and believes and thereon alleges that CCITT and ISO each published

identical versions of what is commonly known as the JPEG Standard:  CCITT Recommendation

T.81, published on September 21, 1992; and ISO International Standard 10918-1, published on

February 15, 1994.  Samsung denies all allegations of paragraph 6 to the extent they are

inconsistent with the above.

**Complaint Paragraph 7:**

Upon information and belief, specific procedures for the encoding of images are set forth

in the JPEG Standard.

**Answer to Complaint Paragraph 7:**

Samsung admits that certain specific procedures for the encoding of images are set forth

in the JPEG Standard, CCITT Recommendation T.81 and ISO International Standard 10918-1.

Samsung denies all remaining allegations of paragraph 7 to the extent they are inconsistent with

the above.

**Complaint Paragraph 8**:

Upon information and belief, Samsung has made, used, sold, offered for sale, and imported image encoding hardware and software products within the United States, including but not limited to cellular telephones.

**Answer to Complaint Paragraph 8**:

Samsung denies the allegations of paragraph 8 as to Samsung Korea.  Samsung admits that Samsung USA has used, sold, offered for sale and imported products that perform image encoding within the United States, but denies the remaining allegations of paragraph 8 as to Samsung USA.

**Complaint Paragraph 9**:

Upon information and belief, Samsung has made, used, sold, offered for sale, and imported image encoding hardware and software products within the United States that follow specific procedures for the encoding of images that are set forth in the JPEG Standard.  These products are hereinafter referred to in this Complaint as "JPEG image encoding products."

**Answer to Complaint Paragraph 9**:

Samsung denies the allegations of paragraph 9 as to Samsung Korea.  Samsung admits that Samsung USA has used, sold, offered for sale and imported products that perform image encoding within the United States that follow at least some of the procedures for the encoding of images that are set forth in the JPEG Standard, but denies the remaining allegations of paragraph 9 as to Samsung USA.

**Complaint Paragraph 10:**

Upon information and belief, the JPEG image encoding products or services of Samsung have been made, used, sold, offered for sale, and imported within the United States without any authority or license from Philips.

**Answer to Complaint Paragraph 10:**

Samsung denies the allegations of paragraph 10.

### Personal Jurisdiction and Venue

**Complaint Paragraph 11:**

Upon information and belief, Samsung USA voluntarily placed JPEG image encoding products or services into the stream of United States commerce, conscious that Delaware, which is within this judicial district, was the likely destination of a substantial quantity of such products or services.

**Answer to Complaint Paragraph 11:**

Samsung denies the allegations of paragraph 11.

**Complaint Paragraph 12:**

Upon information and belief, Samsung Korea voluntarily placed JPEG image encoding products or services into the stream of United States commerce, conscious that Delaware, which is within this judicial district, was the likely destination of a substantial quantity of such products or services.

**Answer to Complaint Paragraph 12:**

Samsung denies the allegations of paragraph 12.

**Complaint Paragraph 13:**

Upon information and belief, a substantial part of the events giving rise to this claim for patent infringement occurred in Delaware and in this judicial district.

**Answer to Complaint Paragraph 13:**

Samsung denies the allegations of paragraph 13.

**Complaint Paragraph 14:**

Upon information and belief, Samsung USA maintains or has maintained continuous and systematic contacts with Delaware and this judicial district.

**Answer to Complaint Paragraph 14:**

Samsung denies the allegations of paragraph 14.

**Complaint Paragraph 15:**

Upon information and belief, Samsung Korea maintains or has maintained continuous and systematic contacts with Delaware and this judicial district.

**Answer to Complaint Paragraph 15:**

Samsung denies the allegations of paragraph 15.

**Complaint Paragraph 16:**

Upon information and belief, Samsung USA is subject to personal jurisdiction in this district because it purposefully engaged in activities that gave rise to this claim for patent infringement and which were directed at residents of Delaware and this judicial district.

**Answer to Complaint Paragraph 16:**

Samsung USA consents to personal jurisdiction in this judicial district in this action but denies the remaining allegations of paragraph 16.

**Complaint Paragraph 17:**

Upon information and belief, Samsung Korea is subject to personal jurisdiction in this district because it purposefully engaged in activities that gave rise to this claim for patent infringement and which were directed at residents of Delaware and this judicial district.

**Answer to Complaint Paragraph 17:**

Samsung Korea consents to personal jurisdiction in this judicial district in this action but denies the remaining allegations of paragraph 17.

**Complaint Paragraph 18:**

Upon information and belief, Samsung USA is subject to personal jurisdiction in this district because it has maintained continuous and systematic contacts with Delaware and this judicial district.

**Answer to Complaint Paragraph 18:**

Samsung USA consents to personal jurisdiction in this judicial district in this action but denies the remaining allegations of paragraph 18.

**Complaint Paragraph 19:**

Upon information and belief, Samsung Korea is subject to personal jurisdiction in this district because it has maintained continuous and systematic contacts with Delaware and this judicial district.

**Answer to Complaint Paragraph 19:**

Samsung Korea consents to personal jurisdiction in this judicial district in this action but denies the remaining the allegations of paragraph 19.

**Complaint Paragraph 20:**

Upon information and belief, Samsung USA resides in this district for purposes of

28 U.S.C. §§ 1391(c) and 1400(b) because it is subject to personal jurisdiction in this district.

**Answer to Complaint Paragraph 20:**

Samsung USA consents to venue in this district in this action but denies the remaining

allegations of paragraph 20.

**Complaint Paragraph 21:**

Upon information and belief, Samsung Korea resides in this district for purposes of

28 U.S.C. §§ 1391(c) and 1400(b) because it is subject to personal jurisdiction in this district.

**Answer to Complaint Paragraph 21:**

Samsung Korea consents to venue in this district in this action but denies the remaining

allegations of paragraph 21.

**Complaint Paragraph 22:**

Upon information and belief, venue for this civil action in this judicial district is proper

under 28 U.S.C. §§ 1391(b), 1391(c), 1391(d) and 1400(b).

**Answer to Complaint Paragraph 22:**

Samsung consents to venue in this judicial district in this action but denies the remaining

allegations of paragraph 22.

## The Patent-in-Suit

**Complaint Paragraph 23:**

United States Letters Patent No. 4,901,075 ("the '075 patent") issued on February 13,

1990, to Peter Vogel.  A copy of the '075 patent, entitled "Method and Apparatus for Bit Rate

Reduction," is attached hereto as Exhibit A.

**Answer to Complaint Paragraph 23:**

Samsung admits that United States Patent No. 4,901,075 ("the '075 patent") purportedly issued on February 13, 1990 to Peter Vogel and that a copy of the patent, titled "Method and Apparatus for Bit Rate Reduction," is attached as Exhibit A to the Complaint. Samsung denies that the '075 patent was duly and legally issued.

**Complaint Paragraph 24:**

U.S. Philips Corporation is the owner by assignment of the '075 patent.

**Answer to Complaint Paragraph 24:**

Samsung lacks sufficient information and belief to admit or deny the allegations of paragraph 24 and on that basis denies the allegations of that paragraph.

**Claim for Infringement Against Samsung**

**Complaint Paragraph 25:**

Samsung had knowledge of the '075 patent before the filing of this lawsuit.

**Answer to Complaint Paragraph 25:**

Samsung admits it had knowledge of the '075 patent before the filing of this lawsuit.

**Complaint Paragraph 26:**

Samsung had notice of infringement of the '075 patent before the filing of this lawsuit.

**Answer to Complaint Paragraph 26:**

Samsung admits that Philips notified Samsung before the filing of this lawsuit that Samsung allegedly infringed the '075 patent, but otherwise denies the allegations of paragraph 26.

**Complaint Paragraph 27:**

Upon information and belief, Samsung has directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '075 patent, both literally and under the doctrine of equivalents, by making, using, selling, offering for sale, and importing JPEG image encoding products within the United States.

**Answer to Complaint Paragraph 27:**

Samsung denies the allegations of paragraph 27.

**Complaint Paragraph 28:**

Upon information and belief, the infringing JPEG image encoding products of Samsung include but are not limited to cellular telephones such as the Samsung A437, Samsung A500, Samsung A600, Samsung A610, Samsung A620, Samsung A640, Samsung A670, Samsung A680, Samsung A700, Samsung A717, Samsung A727, Samsung A770, Samsung A790, Samsung A800, Samsung A840, Samsung A850, Samsung A880, Samsung A890, Samsung A920, Samsung A930, Samsung A940, Samsung A950, Samsung A970, Samsung A990, Samsung C417, Samsung D407, Samsung D410, Samsung D415, Samsung D807, Samsung E315, Samsung E316, Samsung E317, Samsung E335, Samsung E600, Samsung E635, Samsung E700, Samsung E715, Samsung I607, Samsung I760, Samsung M300, Samsung M500, Samsung M510, Samsung M610, Samsung M620, Samsung MM-A700, Samsung MM-A800, Samsung MM-A880, Samsung MM-A900, Samsung MM-A920, Samsung MM-A940, Samsung MM-A960, Samsung P107, Samsung P207, Samsung P730, Samsung P735, Samsung P777, Samsung PM-A740, Samsung PM-A840, Samsung T309, Samsung T319, Samsung T329, Samsung T409, Samsung T419, Samsung T429, Samsung T509, Samsung T519, Samsung T609, Samsung T619, Samsung T629, Samsung T709, Samsung T719, Samsung T729, Samsung T809, Samsung

U340, Samsung U410, Samsung U540, Samsung U620, Samsung U740, Samsung V200,

Samsung V205, Samsung V206, Samsung ZX10, and Samsung ZX20.

**Answer to Complaint Paragraph 28:**

Samsung denies the allegations of paragraph 28 as to Samsung USA.  Samsung admits

that some of the cited cellular telephone products (to the extent the product designations

identified by Philips can be understood by Samsung) of Samsung Korea perform image encoding

and follow at least some of the procedures for the encoding of images that are set forth in the

JPEG Standard.  Samsung otherwise denies the allegations of paragraph 28.

**Complaint Paragraph 29:**

Upon information and belief, the infringement by Samsung has been deliberate and

willful.

**Answer to Complaint Paragraph 29:**

Samsung denies the allegations of paragraph 29.

**Prayer for Relief**

Samsung denies that Philips is entitled to any of the relief by way of its Complaint.

## DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.'S AND SAMSUNG ELECTRONICS AMERICA, INC.'S DEFENSES

### First Defense (Failure to State a Claim)

30.     Philips fails to state any claim upon which relief may be granted.

### Second Defense (Noninfringement)

31.     Samsung does not infringe, nor has it ever infringed, any valid claim of the '075 patent, either directly or indirectly, literally or under the doctrine of equivalents.

### Third Defense (Invalidity)

32.     Each claim of the '075 patent is invalid or void for failure to comply with one or more provisions of the Patent Laws of the United States of America, Title 35, United States Code, including but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

### Fourth Defense (Equitable Estoppel)

33.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 in its Counterclaims below.

34.     Samsung's fourth affirmative defense is based on the doctrine of equitable estoppel on account of the misleading silence and/or misrepresentations of Philips (by and through its related corporate affiliates, including those listed in paragraph 11 of Samsung's Counterclaims below) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from

1984 to 1994, as well as Philips' continued silence thereafter including the years during which Samsung Korea developed and sold products that utilized the JPEG Standard.

35.     As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips (by and through its related corporate affiliates) had a duty to disclose its patent interests relevant to the JPEG Standard.

36.     On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

37.     On information and belief, if Philips had disclosed the purported relevance of the '075 patent to the JPEG Standard and had refused to agree to license the patent on fair, reasonable and non-discriminatory terms such as the royalty terms that had been offered by IBM and AT&T, the various committees that worked to develop and approve the JPEG Standard could have and would have instead adopted any one of a number of available and technically feasible alternatives—including IBM's proposed ABAC technique that IBM openly disclosed to the JPEG committee along with an offer to license for a one-time fee of $5,000 the patents that would be "necessarily infringed" by JPEG and $10,000 for additional patents that IBM believed would be useful in the efficient implementation of JPEG.

38.     In adopting and implementing the JPEG Standard in its products, Samsung Korea reasonably relied on the patent disclosures in Annex L of the JPEG Standard (published listing of patents that may be required for the implementation of any one of the processes specified in the JPEG Standard) and Philips' silence and misrepresentations regarding the applicability of the '075 patent. Samsung Korea's understanding that the JPEG Standard was an open standard that was unencumbered by patent claims was the direct result of Philips' silence and directly led to Samsung Korea's economic and evidentiary prejudice.

39.     Based on the above referenced and stated allegations, Philips' claims for relief are barred, in whole or in part, by the doctrine of equitable estoppel.

## Fifth Defense (Laches)

40.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 in its Counterclaims below.

41.     On information and belief, Philips was aware of the developing JPEG Standard and its contents no later than July 1990 when it attended the ISO Working Group 8 meeting in Porto, Portugal. At that meeting—attended by Philips' representatives Mr. Schylander (Philips International B.V.) and Dr. Morris (Philips Research Laboratories)—a report was given on JPEG Committee Draft 10918.

42.     On information and belief, Philips also was aware, no later than 1990, that the JPEG Standard was being implemented in the market.

43.     Further, by no later than 1992, Philips knew or should have known about the use of the JPEG Standard in a variety of different types of software including browsers, illustration programs and web design programs.

15

44.     In the intervening years of Philips' delay, the JPEG Standard became deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images.  Since the adoption of the JPEG Standard, Samsung Korea has made significant investments in products that implement the JPEG Standard and brought to market its first such products years before Philips filed this lawsuit.  Philips either knew or should have known of Samsung Korea's purported infringement years before it filed this lawsuit.

45.     Notwithstanding Philips' knowledge as alleged above, on information and belief, Philips did not attempt to enforce the '075 patent against any implementer of the JPEG Standard until the spring of 2006, when it filed multiple lawsuits against Eastman Kodak Company, Konica-Minolta Photo Imaging, LG Electronics and Pantech Wireless.

46.     Philips first notified Samsung of its alleged infringement in 2004.

47.     The '075 patent expired on September 11, 2007.  The instant lawsuit was not filed until September 17, 2009.  Philips' unreasonable and unexcused delay in bringing suit against Samsung has resulted in material economic and evidentiary prejudice to Samsung.

48.     Based on the allegations referenced and stated above, Philips' claims for relief are barred, in whole or in part, by the doctrine of laches.

**Sixth Defense (Patent Exhaustion, License & Release)**

49.     Samsung incorporates by reference the allegations in paragraphs 33 through 39 above and paragraphs 1 through 63 in its Counterclaims below.

50.     On information and belief, Philips' claims for relief are barred, in whole or in part, by the doctrine of patent exhaustion on account of one or more licenses, implied licenses,

releases or other agreements related to the '075 patent including without limitation license agreements relating to or involving Samsung and/or its corporate affiliates, the MPEG-LA, and/or Qualcomm, Inc.

### Seventh Defense (Unclean Hands)

51.     Samsung incorporates by reference the allegations in paragraphs 33 through 39 above and paragraphs 1 through 63 in its Counterclaims below.  Philips' conduct including its misleading silence and misrepresentations (by and through its related corporate affiliates, including those listed in paragraph 11 of Samsung's Counterclaims below) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter including the years during which Samsung Korea developed and sold products that utilized the JPEG Standard, bear a direct and immediate connection to the claims that Philips is asserting in the instant lawsuit.  Based on at least the above, Philips' claims for relief are barred, in whole or in part, by the doctrine of unclean hands.

### Eighth Defense (Fraud - Recoupment)

52.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 in its Counterclaims below.

53.     Samsung's affirmative defense for fraud is based on the silence and misrepresentations of Philips (by and through its related corporate affiliates) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development

and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Samsung Korea developed products that utilized the JPEG Standard.

54.   As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

55.   On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

56.   On information and belief, despite its duty to disclose relevant patents, its knowledge of the proposed JPEG Standard and repeated requests to identify relevant patents to the standard-setting bodies, Philips intentionally failed to disclose the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent, its foreign counterparts, or the foreign applications to which the '075 patent claims priority.  On information and belief, Philips concealed its patent interests, including the '075 patent, with the intent that its purportedly patented subject matter be incorporated into the technique that was adopted as the JPEG Standard so that it could seek royalties against those who subsequently developed products in conformance with the JPEG Standard.

57.     In adopting and implementing the JPEG Standard, Samsung Korea reasonably relied on the patent disclosures in Annex L of the JPEG Standard (published listing of patents that may be required for the implementation of any one of the processes specified in the JPEG Standard) and Philips' silence and misrepresentations regarding the applicability of the '075 patent.  Samsung Korea's understanding that the JPEG Standard was an open standard that was unencumbered by patent claims by Philips was the direct result of Philips' silence.

58.     Samsung Korea invested in products that incorporate the baseline JPEG Standard in reasonable reliance on Philips' silence and misrepresentations.

59.     Philips now alleges in the instant lawsuit that Samsung Korea's products that incorporate the baseline JPEG Standard infringe the '075 patent and that such infringement has resulted in damages to Philips.  Any damages alleged by Philips in this lawsuit are the direct result of, and arise from the same transaction as, Philips' fraudulent conduct as alleged above.

60.     Based on at least the above, any damages sought by Philips for infringement of the '075 patent are reduced, in whole or in part, as a direct result of Philips' fraud under the doctrine of recoupment.

### Ninth Defense (Negligent Misrepresentation - Recoupment)

61.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 in its Counterclaims below.

62.     Samsung's defense for negligent misrepresentation is based on the silence and misrepresentations of Philips (by and through its related corporate affiliates) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development

19

and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence

thereafter during the years Samsung Korea developed and sold products that utilized the JPEG

Standard.

63.     As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's

subcommittee IST/37 and JPEG—the various committees responsible for the development and

approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the

JPEG Standard.

64.     On information and belief, as a member of CCITT Study Group VIII, ISO

Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details

of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each

organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted

multiple times to approve the JPEG Standard without disclosing the patent interests Philips now

claims are relevant to the JPEG Standard, including the '075 patent.

65.     Despite its duty to disclose relevant patents, its knowledge of the proposed JPEG

Standard and repeated requests to identify relevant patents to the standard-setting bodies, Philips

failed to exercise reasonable care in both (i) reviewing its patents and comparing them to the

proposed JPEG Standard, and (ii) failing to accurately communicate information regarding its

patents to the JPEG committees.

66.     In adopting and implementing the JPEG Standard, Samsung Korea reasonably

relied on the patent disclosures in Annex L of the JPEG Standard (published listing of patents

that may be required for the implementation of any one of the processes specified in the JPEG

Standard) and Philips' silence and misrepresentations regarding the applicability of the '075

20

patent.  Samsung Korea's understanding that the JPEG Standard was an open standard that was

unencumbered by patent claims was the direct result of Philips' silence.

67.     Samsung Korea invested in products that incorporate the baseline JPEG Standard

in reasonable reliance on Philips' silence and misrepresentations.

68.     Philips now alleges in the instant lawsuit that Samsung Korea's products that

incorporate the baseline JPEG Standard infringe the '075 patent and that such infringement has

resulted in damages to Philips.  Any damages alleged by Philips in this lawsuit are the direct

result of, and arise from the same transaction as, Philips' negligent misrepresentation as alleged

above.

69.     Based on at least the above, any damages sought by Philips for infringement of

the '075 patent are reduced, in whole or in part, as a direct result of Philips' negligent

misrepresentation under the doctrine of recoupment.

### Tenth Defense (Implied License)

70.     Samsung incorporates by reference the allegations in paragraphs 33 through 39

above, and paragraphs 1 through 63 in its Counterclaims below.

71.     As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's

subcommittee IST/37 and JPEG—the various committees responsible for the development and

approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the

JPEG Standard.

72.     On information and belief, as a member of CCITT Study Group VIII, ISO

Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details

of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each

organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted

multiple times to approve the JPEG Standard without disclosing the patent interest Philips now

claims are relevant to the JPEG Standard, including the '075 patent.

73.     In adopting the JPEG Standard, Samsung Korea reasonably relied on the patent

disclosures in Annex L of the JPEG Standard (published listing of patents that may be required

for the implementation of any one of the processes specified in the JPEG Standard) and Philips'

silence and misrepresentations regarding the applicability of the '075 patent.  Samsung Korea's

understanding that the JPEG Standard was an open standard that was unencumbered by patent

claims was the direct result of Philips' silence and directly led to Samsung Korea's economic

and evidentiary prejudice.

74.     On information and belief, if Philips had disclosed the purported relevance of the

'075 patent to the JPEG Standard, the various committees who worked to develop and approve

the JPEG Standard could have and would have adopted any one of a number of available and

technically feasible alternatives—including IBM's proposed ABAC technique that IBM openly

disclosed to the JPEG committee along with an offer to license for a one-time fee of $5,000 the

patents that would be "necessarily infringed" by JPEG and $10,000 for additional patents that

IBM believed would be useful in the efficient implementation of JPEG.

75.     Samsung Korea invested in products that incorporate the baseline JPEG Standard

in reasonable reliance on Philips' silence and misrepresentations.

76.     Philips now alleges in the instant lawsuit that Samsung Korea's products that

incorporate the baseline JPEG Standard infringe the '075 patent and that such infringement has

resulted in damages to Philips. Philips' misleading conduct as alleged above and its allegations of infringement against Samsung have resulted in material prejudice to Samsung.

77.     Accordingly, Philips' claims for relief are barred by the doctrine of implied license.

## Eleventh Defense (Prosecution History Estoppel)

78.     On information and belief, Philips' claims for relief are barred, in whole or in part, by the doctrine of prosecution history estoppel and Philips is estopped from asserting a construction of any valid claim to cover or include any Samsung products on account of actions/inactions taken by Philips, its designees, the named inventor, prosecution attorneys and/or others substantively involved in the prosecution of the application that became the '075 patent and/or any reexamination proceedings of the '075 patent, including but not limited to the amendment, cancellation or abandonment of claims, as well as admissions or other statements made to the Patent Office during the prosecution or reexamination of the '075 patent or related patents.

## Twelfth Defense (Patent Marking)

79.     Philips' claims for relief are barred, in whole or in part, by failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

## Thirteenth Defense (Limitation on Damages)

80.     Any recovery by Philips for alleged infringement of the '075 patent is limited, at the very least, under 35 U.S.C. § 286 to any alleged infringement committed no more than six years prior to the filing of the Complaint.

## **Fourteenth Defense (Unenforceablity)**

81.     Samsung alleges that the '075 patent is unenforceable as a result of inequitable

conduct.  On information and belief, before the prosecution of the '075 patent reexamination

("the Reexamination"), the patent owner, the attorneys prosecuting the Reexamination, including

Steven Anzalone and Matthew Levy, and/or others substantively involved in prosecuting the

Reexamination (collectively, "Philips' Representatives") were aware of information material to

the patentability of the claims of the '075 patent, but withheld, concealed and/or

mischaracterized that information with the intent to deceive the United States Patent and

Trademark Office ("USPTO").

82.     The Widcom VT-56 teleconference machine (the Widcom machine) was a prior

art device that was on sale more than one year before the filing date of the '075 patent.

83.     In *US Philips Corp. v. Eastman Kodak Co.*, Civil Action No. 06-00251-GMS

("the Kodak case"), the Widcom machine was alleged to invalidate claims 3, 4, 7, 8 and 11 of the

'075 patent.

84.     During the Kodak case, at least the following printed publications describing the

operation of the Widcom machine (collectively "the Widcom information") were produced to

Philips:

> Expert Report of Dr. Touradj Ebrahimi for U.S. Patent No.
> 4,901,075 on Invalidity ("Ebrahimi Expert Report");
>
> Expert Report of Charles Neuhauser, Ph. D. ("Neuhauser Expert
> Report");
>
> *"Codec Squeezes Color Videoconferencing Through Digital
> Telephone Lines,"* J. Anderson, et al., Electronics, Vol. 57, Jan. 26,
> 1984, ("the Anderson Article"); and

*VTC-56B Coder Theory of Operation* by Widcom, Inc.

85.     Philips' Representatives were aware of the Widcom information before the prosecution of the reexamination of the '075 patent.

86.     The Widcom information is not cumulative of the information already on record in the '075 patent file history or of the information on record in the Reexamination file history.

87.     The Ebrahimi Expert Report included a claim chart comparing claims 3, 4, 7 and 8 of the '075 patent with the descriptions of the Widcom machine found in the Neuhauser Expert Report, the Anderson Article and the *VTC-56B Coder Theory of Operation*.

88.     The claim chart in the Ebrahimi Expert Report specifically identifies where in the Neuhauser Expert Report's description of the Widcom machine, the Anderson Article and the *VTC-56B Coder Theory of Operation* each claim limitation is taught.

89.     The claim chart in the Ebrahimi Expert Report establishes a prima facie case of invalidity of claims 3, 4, 7 and 8 based on the combination of the Neuhauser Expert Report's description of the Widcom machine, the Anderson Article and the *VTC-56B Coder Theory of Operation*.

90.     Thus, the Widcom information comprises printed publications that establish alone or in combination with each other and/or in combination with the other prior art references before the examiner during the reexamination a prima facie case of unpatentability of a claim.

91.     Claims 3, 4, 7, 8 and 11 of the '075 patent were subject to reexamination during the Reexamination.

92.     During the Reexamination, Philips' Representatives argued strenuously to the USPTO in its office action responses and during an interview with the examiner that the claims of the '075 patent were patentable because the claimed "deriving from said signal, a plurality of events ..." and "assigning a codeword ..." claim limitations were not located in the prior art.

93.     The claim chart in the Ebrahimi Expert Report shows that the "deriving from said signal, a plurality of events ..." claim limitation is taught at least on the fourth and fifth pages of the *VTC-56B Coder Theory of Operation* and at least on page 114 of the Anderson article.

94.     The claim chart in the Ebrahimi Expert Report shows that the "assigning a codeword ..." claim limitation is taught at least on page 114 of the Anderson article and described at least on pages 16, 18 and 19 and Exhibits AB and AC of the Neuhauser Expert Report.

95.     Thus, the Widcom information refutes, or is inconsistent with, a position Philips' Representatives took in opposing an argument of unpatentability of the '075 patent relied on by the USPTO during the Reexamination.

96.     The Widcom information also refutes, or is inconsistent with, a position Philips' Representatives took in asserting an argument of patentability of the '075 patent during the Reexamination.

97.     For at least the foregoing reasons, the Widcom information is highly material to the patentability of one or more claims of the '075 patent.

98.     In Philips' Opposition to Kodak's Motion In Limine No. 3, docket entry number 184 in the Kodak case, Philips' Representatives told this Court that Philips believed that the

Widcom machine was "Kodak's primary reference for its defense of invalidity" and included the claim chart from the Ebrahimi Expert Report as an exhibit.

99.     As such, Philips' Representatives were not only aware of the Widcom information, they were aware it was highly material to the patentability of the claims of the '075 patent.

100.     Despite their prior knowledge of the Widcom information from other litigations and their knowledge of its high materiality to the '075 patent, Philips' Representatives withheld the Widcom information from the USPTO during the Reexamination.

101.     On information and belief, the highly material Widcom information was withheld from the USPTO with the intent to deceive the USPTO.

### Fifteenth Defense (Reservation of Defenses)

102.     Samsung presently lacks sufficient knowledge or information upon which to form a belief as to whether it may have additional, yet unstated defenses.  As such, Samsung reserves the right to assert additional defenses in the event that investigation and/or discovery reveal that additional defenses are appropriate.

**DEFENDANTS AND COUNTERCLAIMANTS
SAMSUNG ELECTRONICS CO., LTD.'S AND
SAMSUNG ELECTRONICS AMERICA, INC.'S COUNTERCLAIMS**

Defendants/Counterclaimants Samsung Electronics Co., Ltd. and Samsung Electronics
America, Inc. (collectively "Samsung") allege the following counterclaims against
Plaintiff/Counterclaim Defendant U.S. Philips Corporation ("Philips"):

**Nature of Counterclaims**

1.     Samsung's counterclaims against Philips seek, among other relief, the following:

    a.   a declaratory judgment that United States Patent No. 4,901,075 ("the '075
patent") is not infringed, in whole or in part;

    b.   a declaratory judgment that the '075 patent is invalid, in whole or in part; and

    c.   damages under Delaware common law for Philips' fraud and negligent
misrepresentation.

2.     This action arises out of efforts by Philips to enforce an expired, invalid and non-
infringed patent now alleged to cover the JPEG Standard, even though Philips (by and through
its related corporate subsidiaries, including those referenced below in paragraph 11) participated
in the development of the JPEG Standard and failed to disclose the '075 patent, as well as the
patent applications to which '075 patent claims priority, during the development and subsequent
approval of the JPEG Standard.

3.     The JPEG Standard is the result of several years of worldwide collaboration by
multiple companies, countries and standard-setting organizations.  The work largely was
performed by the Joint Photographic Experts Group ("the JPEG committee") that consisted of
representatives from at least two international standard-setting organizations—the International
Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards

28

Organization ("ISO").  Each organization had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression:  CCITT Study Group VIII and ISO Working Group 8, which later became Working Group 10.

4.      The JPEG Standard is published in two separate but identical standards:  (i) CCITT Recommendation T.81, published on or about September 21, 1992; and (ii) ISO International Standard 10918-1, published on or about February 15, 1994.  The JPEG Standard provides compatibility for compression, decompression, transmission and storage of digital still images and allows users to store and share digital still images among and between products from various manufacturers worldwide.

5.      The types of products that may incorporate the JPEG Standard in their design include a wide variety of hardware devices and software applications such as personal computers, personal digital assistants, digital cameras, digital camcorders, cellular telephones, internet browsers, document or photo viewers, editing software, printers, scanners, fax machines and the like.  The most common representation of the JPEG Standard is the well-known ".jpg" file extension used by computers and related devices to store photographs and other digital still images.

6.      Since the adoption of the JPEG Standard in the early 1990s, hundreds of companies throughout the United States and the world have embraced the JPEG Standard and developed products compliant with the standard.  Private consumers and businesses also rely on the JPEG Standard.

7.      Philips now seeks to profit on this reliance by claiming that the expired '075 patent covers technology essential to the JPEG Standard.  By pursuing these claims, Philips has

been and is attempting to unlawfully subvert the JPEG Standard to extract unwarranted compensation for its invalid and non-infringed patent.

8.      This is not the only lawsuit Philips and its related entities have filed alleging patent infringement claims based upon the alleged practice of the JPEG Standard.  Philips pursued at least 11 patent lawsuits related to the JPEG Standard from 2006 through 2008. Philips filed these lawsuits against Eastman Kodak Company, Konica-Minolta, LG Electronics and Pantech Wireless, Inc. in the United States, Germany, France, Korea and the Netherlands. Philips is accusing Samsung of infringement in this Court.

## The Parties

9.      Samsung Electronics Co., Ltd. ("Samsung Korea") is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business located at Samsung Electronics Building, 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857, South Korea.

10.     Samsung Electronics America, Inc. ("Samsung USA") is a corporation organized and existing under the laws of New York with its principal place of business located at 105 Challenger Road, Ridgefield Park, New Jersey, 07660.

11.     On information and belief, U.S. Philips is a corporation organized and existing under the laws of Delaware with its principal place of business located at 3000 Minuteman Road, Andover, Massachusetts 01810.  U.S. Philips Corporation is a subsidiary of global parent corporation Royal Philips Electronics.  Other subsidiaries of Royal Philips Electronics relevant to these counterclaims include Philips Kommunikations Industrie AG (Germany), Philips Research Laboratories (United Kingdom), Philips Data Systems, Philips International B.V. (Netherlands), Philips Telecommuicatie Industrie (Netherlands) and Philips Consumer

Electronics B.V. (Netherlands).  For at least the purpose of these Counterclaims, the conduct of

the recited persons employed by Royal Philips Electronics and/or its subsidiaries are attributable

to U.S. Philips because such persons had actual or apparent authority to act on behalf of U.S.

Philips and Royal Philips Electronics as agents or otherwise.

### Jurisdiction and Venue

12.     This action arises under the Federal Declaratory Judgments Act, 28 U.S.C.

§§ 2201 and 2202, the United States patent laws, and the laws of Delaware.  An actual,

substantial and continuing justiciable controversy exists between Samsung and Philips that

requires a declaration of rights by this Court.

13.     The Court has subject matter jurisdiction over these claims under 28 U.S.C.

§§ 1331, 1337 and 1338.  The Court has supplemental jurisdiction over Samsung's state law

claims under 28 U.S.C. § 1367.  The Court has diversity jurisdiction over Samsung's state law

claims as the amount in controversy exceeds, exclusive of interest and costs, the sum specified

by 28 U.S.C. § 1332.

14.     The Court has personal jurisdiction over Philips by virtue of, among other things,

Philips' consent by filing its Complaint for Patent Infringement in this judicial district.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

### Summary of Philips' Standard-Setting Conduct

**A.     Philips Deceived the International Standard-Setting Community During its
        Participation in the Development and Approval of the JPEG Standard**

16.     The '075 patent issued to Philips in February 1990.  Before, during and after the

issuance of '075 patent, Philips (by and through its related corporate affiliates, including those

referenced in paragraph 11) was a member of at least three standard-setting organizations

involved in the development and adoption of the JPEG Standard, including the International

31

Telegraph and Telephone Consultative Committee ("CCITT"), the International Standards Organization ("ISO") and the British Standards Institution ("BSI"). Philips also was an active participant in the particular subcommittees or working groups within these organizations that were dedicated to the development and adoption of the JPEG Standard, including at least CCITT Study Group VIII, ISO Working Group 8, BSI's IST/37 subcommittee, and the JPEG committee formed as a collaboration between CCITT Study Group VIII and ISO Working Group 8.

17.     As a result of its participation in the development and approval of the JPEG Standard, Philips had a legal duty to disclose the '075 patent and its foreign counterparts to the various standard-setting bodies, working groups, study groups and members developing the JPEG Standard.

18.     Philips did not disclose the '075 patent, its foreign counterparts or the applications to which the '075 patent claims priority to CCITT Study Group VIII, ISO Working Group 8, BSI's IST/37 subcommittee, or to the JPEG committee during the development and approval of the JPEG Standard, despite (i) stated polices requiring disclosure of patents relevant to the JPEG Standard, (ii) repeated requests from these committees to disclose patents relevant to the JPEG Standard, and (iii) Philips having voted on multiple occasions to approve the JPEG Standard.

19.     By failing to disclose patent rights that it now (incorrectly) claims are relevant to the JPEG Standard, Philips violated its legal duties.

20.     Like other similarly situated companies, Samsung reasonably relied to its material, economic and evidentiary detriment on Philips' misleading silence and affirmative misrepresentations by reasonably believing the JPEG Standard was not encumbered by undeclared Philips patents, such as the '075 patent, and by subsequently adopting the JPEG

Standard and making and selling products in conformance with the JPEG Standard's
specifications.

### 1.  1984-85:  Philips Became a Member of Various Standard-Setting Groups Dedicated to the Development of the JPEG Standard

21.     Efforts to develop the JPEG Standard began in or about September 1982 when
ISO Working Group 8 was established and assigned the task of identifying picture coding
mechanisms and encoding principles for graphic and photographic images.  Soon thereafter, a
subgroup of ISO Working Group 8, known as the "Photographic Experts Group" (or "PEG"),
began analyzing options for standardizing a compression technique for still images.  PEG
became JPEG (the "Joint Photographic Experts Group") when ISO Working Group 8 began to
collaborate with a subgroup from a different standard-setting body, CCITT Study Group VIII.

22.     At least as early as April 1984, Philips was a contributing member of ISO
Working Group 8.  Philips continued to participate in and attend meetings of ISO Working
Group 8 through at least the early 1990s.

23.     At least as early as June 1985, Philips was a member of  CCITT Study Group
VIII.  Philips continued to participate in and attend meetings of CCITT Study Group VIII
through at least the early 1990s.  Philips was also an active member of CCITT Study Group XV
at least as early as July 1985.  CCITT Study Group XV developed Recommendation H.261, a
precursor to the video compression standard known universally as "MPEG."  CCITT Study
Group XV coordinated its efforts with JPEG, and Philips continued to participate in CCITT
Study Group XV meetings through at least the early 1990s.

2.    1986-87: Philips Became an Active Participant in Developing the JPEG
      Standard and Filed Patent Applications without Disclosing them to CCITT
      or ISO in the Context of the Developing JPEG Standard

24.    As early as Summer 1986, Philips had established itself as a leader in the

development and adoption of the JPEG Standard.  ISO Working Group 8 even recognized the

work of Philips in or around June 1986 by sending a letter to Philips representative Loek

Zeckendorf (Philips Data Systems) thanking him for his "contribution" to the committee's "Draft

Proposals for Identifying Picture, Coding Methods and Encoding Principles for Picture Coding."

25.    On September 13, 1986, Philips filed German patent application no. 3,631,252,

the first of three German applications to which the '075 patent claims priority.

26.    On November 11, 1986, PEG became JPEG when experts from ISO Working

Group 8 and CCITT Study Group VIII held their first combined meeting in New Jersey.  The

meeting, like subsequent JPEG meetings, was held under the auspices of ISO Working Group 8.

The initial years of JPEG were dedicated to reaching agreement on the requirements of a still

image coding system.  It was also announced that CCITT Study Group XV—the CCITT video

compression study group in which Philips participated—would be informed of JPEG's work.

27.    Since as early as December 1983, CCITT policy required study group members to

disclose known patents concerning any subject matter under study.  To the extent such patents

existed, CCITT requirements stated that patent holders were required to make the patent

available to members and to grant licenses on a non-discriminatory basis and for reasonable fees,

as follows:

> These rules stipulate that Study Group members should inform the meeting if
> they know of any patent concerning a subject under study.  If such a patent exists,
> the patent holder is required to make the patent available to members.  The minimum
> requirements are, to grant licenses on a non-discriminatory basis and for reasonable
> fees.  Such a statement by the patent holder is usually published as a meeting
> document.  Members of the Study Group are then free to negociate a license agreement
> with the patent holder until the next  Plenary Assembly when the draft Recommendation
> concerned is submitted by the Study Group for approval by the Plenary.

28.     On November 8, 1986, Philips filed German patent application no. 3,638,12, the second of three German applications to which the '075 patent claims priority.

29.     In or around November 1986, Philips (Philips Kommunikations Industrie AG) made a technical disclosure to CCITT Study Group XV in connection with development of the MPEG Standard.  Notably, Philips did not make the same disclosure to CCITT Study Group VIII or the JPEG committee in connection with development of the JPEG Standard.

30.     In March 1987, Philips representative Simon Turner (Philips Research Laboratories) attended a JPEG meeting in Darmstadt, Germany.  At the meeting, the participants discussed twelve different compression techniques that were being considered for the JPEG Standard.  One of those proposals was ESPRIT's Adaptive Discrete Cosine Transform ("ADCT") proposal.

31.     On May 23, 1987, Philips filed the third German patent application (no. 3,717,399) to which the '075 patent claims priority.

32.     In or around June 1987, at a JPEG meeting in Copenhagen, Denmark, the JPEG committee considered ten compression techniques (out of an original twelve proposals) and chose three finalists for the JPEG Standard: (1) ADCT, proposed by ESPRIT; (2) Adaptive Binary Arithmetic Coding ("ABAC"), proposed by IBM; and (3) Generalized Block Truncated Coding ("GBTC"), proposed by the Japanese national body.  ADCT eventually won the competition and became the baseline for the JPEG Standard.

33.     Had Philips made its purported patent interests known during the development of the JPEG Standard, the JPEG committee could have replaced the ADCT technology with any one of these other acceptable and available alternatives.

34.     On September 11, 1987, Philips filed United States Patent Application No. 96,177, which issued as the '075 patent on February 13, 1990.

35.     In or around November 1987, ISO Working Group 8 sent a memorandum to CCITT Study Group XV requesting to establish a "formal liaison" between the two groups.  At the time, Philips was an active participant in both committees—the former being dedicated to what became JPEG (still image compression) and the latter to what became MPEG (video compression).  The November 1987 memorandum, which Samsung is informed and believes was distributed to CCITT Study Group XV members in January 1988, explained that "JPEG is currently aiming at a single coding algorithm for still images to be agreed end of January 1988, and as far as JPEG knows, SGXV is also aiming at a recommendation on a unified algorithm for videoconferencing services...."  The memorandum identified the JPEG ADCT coding technique as a finalist and noted several "commonalities" between the ADCT technique and the technique being considered by CCITT Study Group XV—the technique that had led Philips to make its November 1986 technical disclosure to CCITT Study Group XV.

36.     On information and belief, Philips received this memorandum in connection with its participation in JPEG, ISO Working Group 8 or CCITT Study Groups VIII and XV.  As such, Philips was either aware or should have been aware of the relationship between the U.S. patent application that became the '075 patent (and the three German applications to which the '075 patent claims priority), its participation in the development of the JPEG Standard, and its November 1986 technical disclosure to CCITT Study Group XV concerning the H.261 standard (the precursor to MPEG).  Despite this, Philips never disclosed either the U.S. patent application that became the '075 patent, or its corresponding foreign applications, to the CCITT, ISO or JPEG committees in the context of the JPEG Standard.

3.      1988-90:  Philips Continued to Participate in Developing the JPEG
Standard and Failed to Disclose the '075 Patent Despite Several Reminders

37.     In or around January 1988, the JPEG committee evaluated the three finalists for

the JPEG Baseline System—ADCT, ABAC and GBTC.  Although the committee concluded

there was technically "no big difference" among the three candidates, ADCT received the

highest marks on subjective testing and the committee made ADCT the "first candidate" for the

standard.

38.     Philips representative Mr. Norman Richards (Philips Research Laboratories)

attended the January 1988 JPEG meeting and, on information and belief, participated in the

committee's decision to choose ADCT as the compression technique for the JPEG Standard.

Despite Mr. Richards' participation in this decision, he did not disclose the patent interests

Philips now claims are relevant to the JPEG Standard.

39.     In February 1988, Philips representatives Mr. Ulf Rothgordt and Mr. Karl Heinz

Wenzel (both of Philips Kommunikations Industrie AG) attended a CCITT Study Group VIII

meeting where the work of that group from 1985 through 1988 was summarized, including a

report on Study Group VIII's participation in the development of the JPEG Standard.  At the

meeting, the chairman referenced the cooperation between ISO and CCITT and asked for

disclosure of "any patents relevant to any T-series Recommendation."  Despite this request, the

Philips representatives did not disclose the patent interests Philips now claims are relevant to the

JPEG Standard.

40.     In May 1988, Philips representative Mr. Gerald Weth (Philips Kommunikations

Industrie AG) attended a JPEG meeting in Ottawa, Canada that included a presentation of the

draft functional specification of the JPEG Standard.  At this meeting, the committee Chairman

distributed a memo titled "Patent Policy on the JPEG Standard."  It included a list of patents

previously disclosed to the CCITT Study Group XV (the committee working on the precursor to

the MPEG video compression standard) and stated:

> We would like to make great efforts to find out relevant patents, and if one
> or more such patents will be found, we would like to ask patent holders to
> declare to be obedient to the patent policy of ISO and CCITT.  However,
> complete survey cannot be done before standardization, thus I would like
> to suggest [sic] following.  To ask each national member body to adopt
> our patent policy.  The holders of patents which are relevant to the
> standard should first clarify the existence of patents, then should declare in
> ISO/CCITT meeting that they are obedient to the policy even if they are
> aware of the fact after the standardization.

Despite attending this meeting, the Philips representative did not disclose the patent interests

Philips now claims are relevant to the JPEG Standard.

41.     In or around September 1988, Philips disclosed to CCITT Study Group XV (the

subcommittee working on the precursor to the MPEG video compression standard) the three

German patent applications to which the '075 patent claims priority.  On information and belief,

Philips did not disclose these applications to JPEG, CCITT Study Group VIII, or ISO Working

Group 8 despite its participation in these committees.

42.     In or around February 1989, the JPEG committee published to the ISO Working

Group 8 and CCITT Study Group VIII committees a call for any patents that might apply to any

proposed parts of the JPEG Standard.  On information and belief, Philips received this call for

patents in connection with its participation in JPEG, ISO Working Group 8 and/or CCITT Study

Group VIII, but did not disclose the patent interests Philips now claims are relevant to the JPEG

Standard.

43.     In July 1989, Philips representatives Dr. John Morris (Philips Research

Laboratories) and Mr. Henk Eisema (Philips Consumer Electronics B.V.) attended an ISO

Working Group 8 Plenary meeting in Stockholm, Sweden.  The meeting included two separate

progress reports on the development of the JPEG Standard.

44.     In or around October 1989, Philips made patent statements to CCITT Study
Group XV (MPEG) stating it was willing to grant licenses to Philips' relevant patents on
reasonable and non-discriminatory terms.  Philips sent similar statements to the CCITT
committee on MPEG again in December 1989.  But Philips did not send similar patent
statements to the various JPEG committees in which it was participating.  On information and
belief, Philips' statements to CCITT Study Group XV demonstrates that Philips understood the
CCITT patent disclosure policy and Philips' obligations as a participant to abide by the licensing
obligations outlined in that policy.

45.     On February 13, 1990, the '075 patent issued.

46.     In or around July 1990, Philips representatives Mr. Eric Schylander (Philips
International B.V.) and Dr. Morris (Philips Research Laboratories) attended an ISO Working
Group 8 Plenary meeting in Porto, Portugal where the JPEG committee reported that final
drafting of the JPEG Committee Draft (commonly called a "CD") would be finished by the end
of October 1990.  The Philips representatives did not disclose the purported patent interests
Philips now claims are relevant to the JPEG Standard, including the newly-issued '075 patent.

**4.      1991-92:  Philips Voted on Multiple Occasions to Approve the JPEG
        Standard**

47.     During 1991, as the JPEG committee moved closer to recommending the
elevation of the JPEG Committee Draft to the level of a Draft International Standard (or DIS),
several JPEG members continued to express concern about identifying patents that might be
relevant to the JPEG Standard.  In response to this concern, the JPEG chairman issued a
memorandum to the JPEG committee on August 4, 1991, requesting that all JPEG participants
disclose relevant patents:

> All patents which you believe, with reasonable likelihood,
> MUST be used in EVERY implementation (whether encoder or
> decoder) of any one or more of the 29 defined coding processes
> specified at the start of Annexes F through J of CD 10918-1.

The JPEG Chairman also asked the JPEG members to identify all patents "that you know of, whether held by you, by another member of your company or organization, by any individual, company, or organization anywhere in the world." Several JPEG members responded to this call for patents. On information and belief, Philips received this request but failed to disclose to the JPEG committee the purported patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

48.    On or about August 19, 1991, the JPEG Chairman sent another memorandum to the JPEG committee attaching a draft of a new annex, Annex L, to be added to JPEG Standard. The memorandum explained that "it has been widely requested that…all known patents which are believed to be required for implementation of any specified coding process, be listed in [the JPEG Standard]." On information and belief, Philips also received this request and again failed to disclose the '075 patent. As a result, the '075 patent is not listed in Annex L.

49.    In August 1991, Philips representatives Mr. Schylander (Philips International B.V.) and Dr. Morris (Philips Research Laboratories) attended a joint JPEG-MPEG meeting in Santa Clara, California. During this meeting, the JPEG committee approved and adopted the introductory language of Annex L as a part of the JPEG Standard. Despite its attendance at the August 1991 meeting, the Philips representatives did not disclose the purported patent interests that Philips now claims are relevant to the JPEG Standard, including the '075 patent.

50.    In October 1991, Philips representative Mr. Wenzel (Philips Kommunikations Industrie AG) attended a CCITT Study Group VIII meeting in Geneva, Switzerland. On information and belief, the Philips representative voted at this meeting to approve the draft of the

40

JPEG Standard that later issued as CCITT Recommendation T.81, but did not disclose the purported patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent. On information and belief, Philips' representative Mr. Wenzel (Philips Kommunikations Industrie AG) continued to participate in Study Group VIII meetings through final approval of the CCITT Recommendation T.81 on September 21, 1992.

51.     By June 1992, Philips also had established itself as an active member in a third standard-setting organization, the British Standards Institution ("BSI"). BSI is the national standards body of the United Kingdom that works with government, businesses and consumers to represent United Kingdom interests and facilitate the production of British, European and international standards. During the early 1990s, Philips chaired IST/37, the BSI subcommittee responsible for standards for coding picture, audio, multimedia and hypermedia information, and also represented the United Kingdom in the work of the international committee ISO/IEC JTC1/SC29 that oversaw the development of CCITT and ISO standards for JPEG.

52.     On or about June 11, 1992, Philips' Dr. John Morris (Philips Research Laboratories) chaired the fourth meeting of IST/37. During the meeting, the European membership considered the draft of the JPEG Standard (commonly referred to as a "DIS" or "draft international standard") and voted to "approve DIS 10918-1 without comments." On information and belief, the Philips representative voted to approve DIS 10918-1, but again did not disclose Philips' purported patent interests that it now claims are relevant to the JPEG Standard, including the '075 patent.

53.     On or about February 15, 1994, the ISO formally approved ISO International Standard 10918-1. On information and belief, Philips voted for final approval of IS 10918-1, but

again did not disclose the purported patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

**B.     Other Companies Participating in the Development and Adoption of the JPEG Standard Disclosed Patents and Willingness to License on Fair and Reasonable Terms**

54.     Both IBM and AT&T disclosed patents relevant to the JPEG Standard during the development and adoption of the JPEG Standard and separately offered to license patents "required" or "essential" to the standard for $5,000.

55.     In October 1991, as the JPEG Standard was being approved by CCITT Study Group VIII and the JPEG Committee, IBM offered a one-time fee of $5,000 for patents that would be "necessarily infringed" by complying with the JPEG Standard and $10,000 for rights to additional IBM patents believed to be "useful in the efficient implementation" of the JPEG Standard.

56.     In June 1994, AT&T offered to license its patents related to the JPEG Standard to the extent AT&T's patents were "essential to the implementation" of the JPEG Standard. Specifically, AT&T offered to license two AT&T patents "essential to the standard" for a one-time royalty of $5,000 and to license a group of seven other patents related to the standard for an "additional one time fee of $10,000."

**C.     Summary**

57.     On information and belief, the facts alleged above demonstrate that:

a.  Philips participated in the development of the JPEG Standard through its participation in at least CCITT Study Group VIII, ISO Working Group 8, BSI subcommittee IST/37 and the JPEG committee;

b.  Philips voted on multiple times to approve the JPEG Standard as a member of
CCITT Study Group VIII, ISO Working Group 8 and BSI subcommittee
IST/37;

c.  Philips was aware of its duty as a member of these committees to disclose its
patent interests—including the '075 patent, its foreign counterparts, and the
applications to which the '075 patent claims priority—that might be relevant
to the JPEG Standard;

d.  Philips failed to disclose the '075 patent, its foreign counterparts, and the
applications to which the '075 patent claims priority to at least CCITT Study
Group VIII, ISO Working Group 8, BSI subcommittee IST/37 and the JPEG
committee during its participation in the development and approval of the
JPEG Standard;

e.  Samsung Korea and other similarly situated companies in the industry
reasonably relied on Philips' silence and/or misrepresentations to conclude
that Philips did not possess patent interests relevant to the JPEG Standard
when Samsung Korea and other companies in the industry adopted the JPEG
Standard and developed and sold products in conformance with the JPEG
Standard's specifications; and

f.  A fair, reasonable and non-discriminatory license for a patent that is allegedly
essential or required by the JPEG Standard is no more than a one-time fee of
$5,000.

58.     On information and belief, Philips was aware of the developing JPEG Standard
and it contents no later than July 1990 when it attended the ISO Working Group 8 meeting in

Porto, Portugal. At that meeting—attended by Philips' representatives Mr. Schylander (Philips

International B.V.) and Dr. Morris (Philips Research Laboratories)—a report was given on JPEG

Committee Draft 10918.

59.     On information and belief, Philips also was aware, no later than 1990, that the

JPEG Standard was being implemented in the market.

60.     Further, by no later than 1992, Philips knew or should have known about the use

of the JPEG Standard in a variety of different types of software, including browsers, illustration

programs and web design programs.

61.     Notwithstanding Philips' knowledge as alleged above, on information and belief,

Philips did not attempt to enforce the '075 patent against any implementer of the JPEG Standard

until the spring of 2006, when it filed multiple lawsuits against Eastman Kodak Company,

Konica-Minolta Photo Imaging, LG Electronics and Pantech Wireless.

62.     In the intervening years of Philips' delay, the JPEG Standard became deeply

entrenched as the preeminent standard for the digital compression, storage and transmission of

still images. Since the adoption of the JPEG Standard, Samsung Korea has made significant

investments in products that implement the baseline JPEG Standard.

63.     The '075 patent expired on September 11, 2007.

## FIRST COUNTERCLAIM

### Declaratory Judgment – Noninfringement of the '075 Patent

64.     Samsung incorporates by reference the allegations in paragraphs 1 through 63

above.

65.     Samsung's first counterclaim is an action for declaratory judgment of

noninfringement of any valid claim of the '075 patent.

66.    Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

67.    Philips has alleged, and continues to allege, that Samsung infringed one or more claims of the '075 patent.

68.    Philips has alleged, and continues to allege, that it is entitled to an award of actual damages on account of Samsung's alleged infringement of the '075 patent.

69.    Philips has alleged, and continues to allege, that Samsung's allegedly infringing activities constitute willful infringement and, therefore, entitle Philips to recover treble damages under 35 U.S.C. § 284.

70.    Philips has alleged, and continues to allege, that this case is an exceptional case justifying an award of attorneys' fees and costs to Philips under 35 U.S.C. § 285.

71.    Samsung denies the allegations made by Philips as listed in paragraphs 66-70.

72.    Samsung never has infringed any valid claim of the '075 patent, either literally or under the doctrine of equivalents, nor has Samsung actively induced or contributed to the infringement of the '075 patent.  Therefore, Samsung is not liable for any damages purportedly arising from Philips' accusation of infringement.

73.    Samsung desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above.  Such a determination and the resulting declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '075 patent.

## SECOND COUNTERCLAIM

### Declaratory Judgment – Invalidity of the '075 Patent

74.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 above.

75.     Samsung's second counterclaim is an action for declaratory judgment of invalidity of the claims of the '075 patent.

76.     Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

77.     Philips has alleged, and continues to allege, that Samsung has been and still is infringing one or more claims of the '075 patent.

78.     Samsung denies the allegations made by Philips as listed in paragraphs 76-77.

79.     The '075 patent, and each claim thereof, is invalid for failure to comply with the conditions and requirements of patentability set forth in Title 35 of the United States Code, particularly 35 U.S.C. § 101 et seq.

80.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 102.

81.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 103.

82.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 112.

83.     Samsung desires and requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in above.  Such a determination

and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties regarding the '075 patent.

## THIRD COUNTERCLAIM

### Fraud

84.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 above.

85.     Samsung's fifth counterclaim is an action for fraud on account of the silence and misrepresentations of Philips (by and through its related corporate affiliates) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Samsung Korea developed products that utilized the JPEG Standard.

86.     As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

87.     On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

47

88.     On information and belief, despite its duty to disclose relevant patents, its knowledge of the proposed JPEG Standard and repeated requests to identify relevant patents to the standard-setting bodies, Philips intentionally failed to disclose the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent, its foreign counterparts, or the foreign applications to which the '075 patent claims priority.  On information and belief, Philips concealed its patent interests, including the '075 patent, with the intent that its purportedly patented subject matter be incorporated into the technique that was adopted as the JPEG Standard so that it could seek royalties against those who subsequently developed products in conformance with the JPEG Standard.

89.     In adopting and implementing the JPEG Standard, Samsung Korea reasonably relied on the patent disclosures in Annex L of the JPEG Standard (published listing of patents that may be required for the implementation of any one of the processes specified in the JPEG Standard) and Philips' silence and misrepresentations regarding the applicability of the '075 patent.  Samsung Korea's understanding that the JPEG Standard was an open standard that was unencumbered by patent claims was the direct result of Philips' silence.

90.     Samsung Korea invested in products that incorporate the baseline JPEG Standard in reasonable reliance on Philips' silence and misrepresentations.

91.     As a result of Philips' fraudulent and intentional failure to disclose the '075 patent and subsequent attempt to assert the '075 patent in the instant lawsuit, Samsung has incurred damages resulting from Philips' filing of this lawsuit in the form of litigation expenses incurred in connection with defending this action, and will continue to be damaged in the future.

## FOURTH COUNTERCLAIM

### Negligent Misrepresentation

92.     Samsung incorporates by reference the allegations in paragraphs 1 through 63 above.

93.     Samsung's sixth counterclaim is an action for negligent misrepresentation on account of the silence and misrepresentations of Philips (by and through its related corporate affiliates) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Samsung Korea developed and sold products that utilized the JPEG Standard.

94.     As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

95.     On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

96.     Despite its duty to disclose relevant patents, its knowledge of the proposed JPEG Standard and repeated requests to identify relevant patents to the relevant standard-setting

bodies, Philips failed to exercise reasonable care in both (i) reviewing its patents and comparing them to the proposed JPEG Standard, and (ii) failing to accurately communicate information regarding its patents to the JPEG committees.

97.    In adopting and implementing the JPEG Standard, Samsung Korea reasonably relied on the patent disclosures in Annex L of the JPEG Standard (published listing of patents that may be required for the implementation of any one of the processes specified in the JPEG Standard) and Philips' silence and misrepresentations regarding the applicability of the '075 patent. Samsung Korea's understanding that the JPEG Standard was an open standard that was unencumbered by patent claims was the direct result of Philips' silence.

98.    Samsung Korea invested in products that incorporate the baseline JPEG Standard in reasonable reliance on Philips' silence and misrepresentations.

99.    As a result of Philips' negligent misrepresentations regarding the patent interests it now claims are relevant to the JPEG Standard, including the '075 patent, and subsequent attempt to assert the '075 patent in the instant lawsuit, Samsung has incurred damages resulting from Philips' filing of this lawsuit in the form of litigation expenses incurred in connection with defending this action, and will continue to be damaged in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Samsung prays for the following relief:

i)      A judgment declaring that Samsung has not infringed and does not infringe, in any manner or in any way, any valid claim of the '075 patent;

ii)     A judgment declaring that each claim of the '075 patent is invalid;

iii)    A judgment that Philips has engaged in fraud;

iv)     A judgment that Philips has engaged in negligent misrepresentation;

50

v)      A permanent injunction prohibiting further or future enforcement of the '075 patent;

vi)      An award of damages adequate to compensate Samsung for the harm caused to it as a result of Philips' unlawful conduct;

vii)      A judgment deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Samsung to an award of reasonable attorneys' fees, expenses and costs in this action; and

viii)      Such other and further equitable or legal relief as the Court or a jury deems proper, including the disgorgement by Philips of all sums that it has obtained pursuant to the scheme described herein.

### JURY TRIAL DEMANDED

Samsung demands a trial by jury as to all issues and causes of action so triable herein,

pursuant to Federal Rule of Civil Procedure 38.

Dated: July 6, 2010                         Respectfully Submitted,


   */s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
Chad S.C. Stover (#4919)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Tel: (302) 658-9141
fdigiovanni@cblh.com
cstover@cblh.com

Mark D. Fowler
Timothy Lohse
**DLA PIPER US LLP**
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:  (650) 833-2000
Fax:  (650) 833-2001

Richard Mulloy
John D. Kinton
Jesse Hindman
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:  (619) 699-2700
Fax:  (619) 699-2701

Attorneys for Defendants/Counterclaimants
Samsung Electronics Co., Ltd. and
Samsung Electronics America, Inc.

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 19th day of April 2010, a true copy of the foregoing **Defendants and Counterclaimants Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s First Amended Answer and Counterclaims** was served upon the following in the manner indicated:

**By Electronic Mail and Hand Delivery**

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

**By Electronic Mail Only**

Frank A. DeCosta, III
Steven M. Anzalone
Matthew A. Levy
Joyce Craig
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
frank.decosta@finnegan.com
steven.anzalone@finnegan.com
matt.levy@finnegan.com
joyce.craig@finnegan.com

/s/ *Francis DiGiovanni*
Francis DiGiovanni (#3189)
fdigiovanni@cblh.com