IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:09-cv-00692-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| SAMSUNG ELECTRONICS | ) | |
| COMPANY, LTD. AND SAMSUNG | ) | |
| ELECTRONICS AMERICA INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____ )


**ANSWERING BRIEF OF SAMSUNG ELECTRONICS CO., LTD.
AND SAMSUNG ELECTRONICS AMERICA, INC. IN OPPOSITION TO
PLAINTIFF U.S. PHILIPS CORPORATION'S MOTION TO STRIKE
INEQUITABLE CONDUCT DEFENSES AS INADEQUATELY PLED**

Francis DiGiovanni (#3189)
Chad S.C. Stover (#4919)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Tel:  (302) 658-9141
e-mail: fdigiovanni@cblh.com
e-mail: cstover@cblh.com

Mark D. Fowler
Timothy Lohse
**DLA PIPER US LLP**
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:  (650) 833-2000

Richard Mulloy
John D. Kinton
Jesse Hindman
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  (619) 699-2700

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.    FACTUAL BACKGROUND ........................................................................................ 3

    A.    The '075 Patent Claims And The Reexamination .................................................. 3

    B.    The Widcom Information Is Highly Material To The Patentability Of The '075 Patent .............................................................................................................. 3

    C.    Philips' Representatives Knowingly Withheld The Widcom Information During Reexamination ........................................................................................... 5

III.    PHILIPS' MOTION SHOULD BE DENIED BECAUSE SAMSUNG'S INEQUITABLE CONDUCT DEFENSES ARE PROPERLY PLED. ............................ 5

    A.    Motions To Strike Are Disfavored ....................................................................... 5

    B.    Samsung Properly Pled Philips' Inequitable Conduct .......................................... 5

    C.    The Withheld Widcom Information Is Material And Would Have Been Properly Considered During The Reexamination To Invalidate The Claims Of The '075 Patent .............................................................................................. 7

        1.    Philips' Motion Improperly Asks The Court To Make Factual Determinations On Samsung's Allegations ............................................ 7

        2.    The Widcom Information Could And Should Have Been Considered By The Examiner During The Reexamination ...................... 7

        3.    The Widcom Information Comprises Printed Publications .................... 13

        4.    The Anderson Article And The VTC-56B Coder Specification Were Each Material To The Reexamination .......................................... 16

IV.    CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

### CASES

*Eolas Techs., Inc. v. Microsoft Corp.*,
   399 F.3d 1325 (Fed. Cir. 2005)..................................................................................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)..........................................................................5, 6, 16

*I.C.E. Corp. v. Armco Steel Corp.*,
   250 F. Supp. 738, 743, (S.D.N.Y. 1966)..................................................................13

*In re Epstein*,
   32 F.3d 1559 (Fed. Cir. 1994)............................................................................9, 10

*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986)..................................................................................13

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004)................................................................................14

*In re Lister*,
   583 F.3d 1307 (Fed. Cir. 2009)................................................................................15

*In re Omeprazole Patent Litig.*,
   536 F.3d 1361 (Fed. Cir. 2008)..........................................................................14, 15

*In re POD-NERS, L.L.C.*,
   337 Fed. Appx. 901, 2009 WL 2029976 (Fed. Cir. July 10, 2009)..........................9

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981)..................................................................................13

*Johnson v. Geico Cas. Co.*,
   516 F. Supp. 2d 351 (D. Del. 2007)............................................................................6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)......................................................................................5

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)...................................................................................5, 7

*ResQNet.Com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)............................................................................13, 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Schering Corp. v. Geneva Pharm., Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003)...............................................................................10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
   742 F.2d 786 (3d Cir. 1984).....................................................................................6

*SmithKline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005)...............................................................................10

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
   630 F. Supp. 2d 395 (D. Del. 2009).........................................................................5

### STATUTES

35 U.S.C. § 102.............................................................................................10, 14, 16

35 U.S.C. § 301...................................................................................................12, 13

### RULES

37 C.F.R. § 1.552(a).................................................................................................13

37 C.F.R. § 1.555(b) .......................................................................................... *passim*

Fed. R. Civ. P. 9 ................................................................................................. *passim*

Fed. R. Civ. P. Rule 12 ......................................................................................5, 7, 15

iii

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT.

U.S. Philips Corporation's ("Philips") motion to strike defendants Samsung Electronics

Co., Ltd. and Samsung Electronics America, Inc.'s ("Samsung") affirmative defense of

inequitable conduct should be denied.  Samsung has pled its factually and legally supported

inequitable conduct defense with more than the requisite specificity required by Rule 9 of the

Federal Rules of Civil Procedure.  Samsung's affirmative defense specifically identifies the

publications related to the prior art Widcom VTC-56 codec machine (the "Widcom machine")

that form the basis of Samsung's inequitable conduct defense, explains in detail why the

discussion and disclosure in those publications are material to the patentability of the claims of

U.S. Patent No. 4,901,075 (the "'075 patent"), and specifically alleges Philips' and its counsel's

intent to withhold that material prior art from the United States Patent and Trademark Office (the

"PTO").  As such, Samsung fully satisfied its pleading obligations under Rule 9.

Philips' primary argument is that three of the four references at issue could not have been

considered by the examiner during reexamination because they allegedly are not prior art.  This

is incorrect.  Well-settled case law establishes that a prior art publication that describes a prior art

product, when considered by the examiner in light of non-prior art references that further

describe that same product, may render a patent's claims invalid during prosecution, including

during a reexamination.  Here, it is undisputed that one of the four references at issue, the

Anderson article, is itself a prior art printed publication that describes the Widcom machine.  As

established by Federal Circuit case law, the examiner here was entitled to—and should have

been given the opportunity by Philips to—consider the Anderson article in view of the

information contained in the other three references about the Widcom machine that was

described in the Anderson article.

Moreover, whether the second of the four references, the VTC-56B Coder specification, is prior art turns on a determination that the Court has not made yet, namely determining the effective filing date of the '075 patent.  This is a disputed issue.  Samsung contends that Philips cannot claim priority to the earlier filed September 13, 1986, German patent application because that application lacks the disclosure necessary to support the claims of the '075 patent.  If the Court later determines that this is correct, then the VTC-56B Coder specification also is prior art to the '075 patent.  As highly material prior art, the specification should have been disclosed to the examiner during the reexamination, and it also could have been considered with the other three references that discuss the Widcom machine.

Philips' motion also errs in seeking factual determinations by the Court that are contrary to the allegations of Samsung's answer.  Philips' arguments require such factual determinations on issues pertaining to whether two of the references were publically available, whether any of the four references would have been material to the examiner, and whether the Anderson article or the VTC-56B Coder specification refute or are inconsistent with positions that Philips took during the reexamination.  Such factual determinations are improper on a motion to strike, where the Court must assume that the pleading's allegations are correct.

Furthermore, the Anderson article—which even Philips acknowledges is prior art—by itself supports Samsung's inequitable conduct defense.  The same is true of the prior art VTC-56B Coder specification.  As alleged in Samsung's answer, the withheld Anderson article and the VTC-56B Coder specification (i) both individually and together invalidate the claims of the '075 patent and (ii) both refute and are inconsistent with positions that Philips took during the reexamination concerning the patentability of the claims.  For these reasons alone, Philips' motion should be denied.

2

## II.      FACTUAL BACKGROUND.

This case is the latest in a series of lawsuits in which Philips has asserted that the '075 patent covers any product implementing the JPEG image encoding standard.  D.I. 1, Complaint ¶ 27.  In its First Amended Answer, Samsung alleges that the now-expired '075 patent is invalid and unenforceable, in part because Philips committed fraud on the PTO during the reexamination of the '075 patent by knowingly withholding highly material information regarding the prior art Widcom machine.  D.I. 18, Samsung's First Amended Answer ¶¶ 81-101.[1]

### A.      The '075 Patent Claims And The Reexamination.

The '075 patent includes claims directed to a method of coding a video signal.  *See, e.g.,* D.I. 1, Complaint Ex. A, '075 patent, claim 3.  The signal comprises a plurality of zero coefficients and a plurality of non-zero coefficients.  *Id.*  A plurality of "events" are derived from the signal.  *Id.*  Each event comprises a "run" of zero-coefficients having a run length preceded or followed by at least one non-zero coefficient.  *Id.*  A single code word is then assigned to represent the event.  *Id.*

The '075 patent was reexamined by the PTO after a substantial new question of patentability was established in light of certain prior art.  D.I. 18, Answer ¶¶ 81-91.  To overcome rejections by the examiner during the reexamination, Philips argued that the prior art failed to disclose the "deriving . . . a plurality of events" and "assigning a code word" claim limitations found in claims 3 and 8 of the '075 patent.  *Id.* ¶ 92.

### B.      The Widcom Information Is Highly Material To The Patentability Of The '075 Patent.

Philips previously asserted the '075 patent against Eastman Kodak in this Court in Civil

---

[1] Samsung's First Amended Answer is herein referred to as "D.I. 18."

Action No. 06-00251-GMS (the "*Kodak* case"). *Id.* ¶ 83. In the *Kodak* case, the prior art

Widcom machine, a machine used for two-way video conferencing, was a basis of Kodak's

patent invalidity defense to the '075 patent and was the subject of extensive document and

deposition discovery, expert reports and pleadings. *Id.* ¶¶ 82-83. The document discovery and

expert reports relating to the Widcom machine included the following printed publications

describing the operation of the Widcom machine (collectively the "Widcom information"):

- "Codec Squeezes Color Videoconferencing Through Digital Telephone Lines," J. Anderson, et al., Electronics, Vol. 57, Jan. 26, 1984, (the "Anderson article");

- VTC-56B Coder Theory of Operation by Widcom, Inc. (the "VTC-56B specification");

- Expert Report of Dr. Touradj Ebrahimi for U.S. Patent No. 4,901,075 on Invalidity ("Ebrahimi expert report"); and

- Expert Report of Charles Neuhauser, Ph.D. ("Neuhauser expert report").

D.I. 18, Answer ¶ 84.

Philips and its attorneys knew that the Widcom information was material. *Id.*

¶¶ 81, 84-90, 92-101. For example, in the *Kodak* case, Philips attached as exhibit 3 to its

opposition to Kodak's Motion *In Limine* No. 3 excerpts of the Ebrahimi expert report, including

a prior art claim chart demonstrating that the Widcom VTC-56 codec anticipates claims 3-4 and

7-8 of the '075 patent. *Id*. ¶¶ 93-94, 98; *Kodak* case, D.I. 184. That chart relies on, *inter alia*,

the Anderson article, the VTC-56B Coder specification and the Neuhauser expert report cited in

Samsung's current inequitable conduct defense. D.I. 18, Answer ¶¶ 93-94. In Philips'

opposition to the motion *in limine*, which was filed after the petition for reexamination was filed

with the PTO, Philips argued to this Court that "[t]he Widcom machine was 'Kodak's primary

reference for its defense of invalidity.'" *Id*. ¶ 98. Thus, Philips and its representatives knew that

the Widcom information identified in Samsung's First Amended Answer was highly material to

4

the patentability of the claims of the '075 patent.

### C.   Philips' Representatives Knowingly Withheld The Widcom Information During Reexamination.

Philips' litigation counsel in the *Kodak* case also represented Philips during the

reexamination of the '075 patent.  D.I. 18, Answer ¶ 81.  Yet, despite being aware of both the

Widcom information and its high materiality, not once did they disclose the Anderson article, the

VTC-56B Coder specification or any of the other printed publications describing the operation of

the Widcom machine to the PTO.  *Id.* ¶¶ 81, 99-101.

### III.   PHILIPS' MOTION SHOULD BE DENIED BECAUSE SAMSUNG'S INEQUITABLE CONDUCT DEFENSES ARE PROPERLY PLED.

### A.   Motions To Strike Are Disfavored.

Motions to strike or dismiss brought pursuant to Rule 12 generally are viewed with

disfavor.  *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del.

2009).  When considering a Rule 12 motion, the court must accept all factual allegations in the

pleadings as true, construe such allegations in favor of the nonmoving party, and determine if the

nonmoving party is entitled to any relief under "any reasonable reading" of the allegations set

forth.  *Phillips v. Cnty. of Allegheny*,  515 F.3d 224, 233 (3d Cir. 2008).  In its analysis, the court

is limited to consideration of only the complaint, the exhibits attached thereto, matters of public

record and authenticated documents if the factual allegations are based thereon.  *See, e.g.,*

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.   Samsung Properly Pled Philips' Inequitable Conduct.

Pleading inequitable conduct requires compliance with the heightened pleading standard

of Rule 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009);

Fed. R. Civ. P. 9(b).  The purpose of Rule 9(b) is "to provide defendants with notice of the

precise nature of the claim against them, not to test the factual allegations of the claim."  *Johnson*

*v. Geico Cas. Co.*, 516 F. Supp. 2d 351, 358 (D. Del. 2007) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  Contrary to Philips' suggestion, Samsung's answer satisfies the requirements for pleading inequitable conduct under *Exergen*.

For an inequitable conduct defense, Rule 9(b) requires an identification of "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Exergen*, 575 F.3d at 1327.  Samsung's answer alleges each of these details:

- "Who" — Samsung's First Amended Answer identifies Philips' representatives, including its counsel, Steven Anzalone and Matthew Levy.  D.I. 18, Answer ¶ 81.

- "What" — Samsung's First Amended Answer identifies the printed publications that comprise the Widcom information.  *Id*. ¶ 84.

- "When" — Samsung's First Amended Answer specifically states that the misconduct occurred during the reexamination of the '075 patent.  *Id*. ¶ 100.

- "Where" — Samsung's First Amended Answer provides specific citations to pages within the Widcom information showing where the relevant claim limitations are found.  *Id*. ¶¶ 87-88, 93-94.

- "How" — Samsung's First Amended Answer specifically identifies the failure to disclose the material Widcom information with an intent to deceive the PTO.  *Id*. ¶¶ 81-101.

Having identified the "who," "what," "where," "when" and "how" of its inequitable conduct defense, Samsung's First Amended Answer provides Philips with more than sufficient information to prepare its response to this defense as required by Rule 9 and *Exergen*.

> **C.** **The Withheld Widcom Information Is Material And Would Have Been Properly Considered During The Reexamination To Invalidate The Claims Of The '075 Patent**.
>
>> **1.** **Philips' Motion Improperly Asks The Court To Make Factual Determinations On Samsung's Allegations.**

Samsung's First Amended Answer alleges in detail: that the Widcom information is material to the patentability of the claims of the '075 patent; that the Widcom information consists of printed publications; and that the Widcom information also refutes and is inconsistent with positions that Philips took during the reexamination concerning the patentability of the '075 patent.  D.I. 18, Answer ¶¶ 81, 84, 90, 92-96.  Philips' motion is premised in part on its assertions that these allegations are factually incorrect.  D.I. 22, Philips Br. pp. 2, 5-6, 9-12.  However, it is improper to ask the Court to make factual determinations on a motion to strike.  Rather, when deciding a motion to strike under Rule 12, the Court must accept all of the pleading's factual allegations as true.  *See, e.g.*, *Phillips,* 515 F.3d at 233.

>> **2.** **The Widcom Information Could And Should Have Been Considered By The Examiner During The Reexamination.**

Philips does not dispute that the Anderson article is a prior art printed publication and would have been considered by the examiner during the reexamination had Philips disclosed it.  Rather, Philips argues that the other three references that comprise the Widcom information—the VTC-56B Coder specification and the Neuhauser and Ebrahimi expert reports—are not prior art and, therefore, according to Philips, could not have been considered by the examiner during the reexamination.  D.I. 22, Philips Br. pp. 4-6, 9-10.  This is incorrect for at least two reasons.

First, as discussed above, whether the VTC-56B Coder specification is a prior art printed publication turns on a determination the Court has not yet made, namely determining the effective filing date of the '075 patent.  As discussed above, this turns on the question of whether Philips' earlier filed September 13, 1986, German patent application supports the claims of the

7

'075 patent—which it does not.  If the '075 patent is not entitled to the earlier September 13, 1986, priority date, then the next earliest effective filing date for the '075 patent, based on a second German patent application cited on the face of the patent, is November 8, 1996.  As Philips notes in its motion, the VTC-56B Coder specification is on its face dated November 1, 1986, which qualifies it as prior art if the effective filing date of the '075 patent is—as it should be—November 8, 1996.  *Id.* p. 3, Ex. 3.  Again, though, the Court has not yet ruled on this issue, which renders premature Philips' argument that the specification is not prior art.

Philips suggests that the examiner's rejection of the October 27, 1986, "Chen" reference as prior art during the reexamination, which was based upon the examiner's incorrect conclusion that the '075 patent is entitled to a September 13, 1986, priority date, somehow resolves this issue.  D.I. 22, Philips Br. p. 4.  However, it is up for the Court to decide, after considering the evidence to be presented on the issue, what the effective filing date of the patent is.  If the Court determines that the effective filing date is November 1, 1996, then it is undisputed that the VTC-56B Coder specification is prior art.  It would be with those two determinations first having been made by the Court that the Court would then turn to the issue of whether Philips' failure to disclose the specification to the PTO constituted inequitable conduct.  In this regard, if the VTC-56B Coder specification had been submitted to the examiner by Philips, as it should have been, then it would have at the time of submission established a *prima facie* case of unpatentability (as established below).

The second reason why Philips is incorrect in asserting that the Neuhauser and Ebrahimi expert reports and the VTC-56B Coder specification should be disregarded on the ground that they are not prior art is Samsung's allegation that each of the four pieces of Widcom information established either alone or in combination with each other, or in combination with the other prior

art references before the examiner during the reexamination, a *prima facie* case of unpatentability of the claims of the '075 patent. D.I. 18, Answer ¶¶ 87-90, 93-94. In this regard, the Federal Circuit, ruling on facts that are not distinguishable from the present case, upheld a Board of Patent Appeals and Interferences (BPAI) finding that a *prima facie* case of unpatentability for obviousness was established during a reexamination based on a prior art publication describing a prior art product in view of a non-prior art publication that further described the same product. *In re POD-NERS, L.L.C.,* 337 F. App'x 901, 902, 2009 WL 2029976, at *1 (Fed. Cir. July 10, 2009); *see also In re Epstein*, 32 F.3d 1559, 1567 (Fed. Cir. 1994) (upholding an examiner's obviousness rejection based on non-prior art documents describing prior art software).

In *POD-NERS*, the claims of the patent were held invalid by the BPAI during a reexamination proceeding as being obvious in view of an article by Salinas describing a prior art bean called Azufrado Peruano 87 when understood in light of an article by Pallotinni and an expert declaration. *In re POD-NERS*, 337 Fed. Appx. at 903. Pallotinni was "not itself prior art, because it post-dated the effective filing date of the Proctor application." *Id.* Nevertheless, Pallotinni described the claimed bean "as being quite similar or even identical to the Azufrado Peruano plants earlier described by Salinas et al., which is prior art." *Id.* The Court held that "while the Pallotinni reference by itself could not render the present claims obvious, Salinas, as understood by Pallotinni, did render them obvious, if not anticipated." *Id.*

The *POD-NERS* case confirms that a prior art printed publication that describes physical prior art, such as Salinas (or Anderson or the VTC-56B Coder specification), can be combined with a non-prior art printed publication, such as Pallotinni (or the other Widcom information), that further describes the same physical prior art, such as the Azufrado Peruano 87 bean (or the

Widcom machine), to establish a *prima facie* case of unpatentability during a reexamination.  As such, Philips' argument that the Widcom information could not have been considered during the reexamination of the '075 patent to invalidate its claims is incorrect as a matter of law.

Similarly, in *In re Epstein*, the PTO: (1) rejected one claim as anticipated in view of the description of a prior art software product in a non-prior art publication; and (2) rejected all of the claims as obvious in view of five non-prior art publications and one prior art publication when viewed in combination with certain other prior art.  *In re Epstein*, 32 F.3d at 1562-63.  The Federal Circuit affirmed the PTO's rejections notwithstanding that "[t]he PTO concede[d] that the abstracts themselves are not prior art under the 'printed publication' provision of section 102(b)."  *Id.* at 1564.  The PTO relied upon the descriptions of the software in the non-prior art publications in finding the claims invalid.  *Id.* at 1565, 1567.

It also is well-settled that if a claim limitation is inherent in a prior art reference, then that inherency can be evidenced by post-critical date information.  *See, e.g., Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (rejecting the contention that inherent anticipation requires recognition by a person of ordinary skill in the art before the critical date and allowing expert testimony with respect to post-critical date clinical trials to show inherency); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343-44 (Fed. Cir. 2005) (holding that a prior art patent inherently anticipated the claimed compound because practicing the prior art process inherently results in the claimed compound even if the prior art did not discuss or recognize that fact).  Here, should the Court later determine in this case that either the Anderson article or the VTC-56B Coder specification does not expressly disclose each of the claim limitations of the asserted claims of the '075 patent, then the other Widcom information references establish that those limitations are at a minimum inherent in what is

10

described in the Anderson article and the specification.  As such, all four references would have been material to the reexamination of the claims of the '075 patent.

In *Eolas Technologies, Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005), the Federal Circuit vacated the District Court's finding that that the patent-in-suit was not invalid in light of a third party's "Viola" browser product, and further vacated the District Court's finding of no inequitable conduct based upon the patentee's failure to disclose information concerning the Viola browser to the PTO.  As to the inequitable conduct defense, the inventor, Mr. Doyle, never possessed the prior art software.  *Id*. at 1330.  However, the developer of the Viola browser had informed Mr. Doyle of its existence, and Mr. Doyle did receive and review a paper and two press releases about the browser.  *Id*.  Although the Federal Circuit found that the later-created paper and the press releases were not themselves prior art, the Court found that a factual issue existed that permitted the defendant to allege an inequitable conduct defense based upon Mr. Doyle's lack of disclosure to the PTO.  *Id*. at 1336.

The foregoing Federal Circuit precedent is consistent with the test for materiality in a reexamination, namely whether the information "is a patent or printed publication that establishes, by itself or in combination with other patents or printed publications, a *prima facie* case of unpatentability of a claim."  37 C.F.R. § 1.555(b)(1).  The test requires that the patents and printed publications establish unpatentability of the claims, not that all of the patents and printed publications themselves be prior art.  *Id*.  Indeed, the term "prior art" is conspicuously absent from this rule.  *Id.*

The PTO's Manual of Patent Examining Procedure ("MPEP") confirms that prior art patents and printed publications are not the only materials that may be considered by the examiner during reexamination.  Section 2205 of the MPEP, which is within the section of the

11

MPEP that addresses the citation of prior art during ex parte reexaminations, states in part:

"Affidavits or declarations or other written evidence relating to the prior art documents

submitted may accompany the citation to explain the contents or pertinent dates in more detail."

Declaration of John D. Kinton in Support of Samsung's Opposition to Philips' Motion to Strike

Inequitable Conduct Defenses as Inadequately Pled ("Kinton Decl."), Ex. A, MPEP § 2205.

Thus, the PTO itself recognizes that non-prior art materials that bear on prior art before the

examiner may be considered during a reexamination.

Here, the prior art Anderson article and the prior art VTC-56B Coder specification each

describes the operation of the Widcom machine.  D.I. 18, Answer ¶¶ 82-84.  Each of these two

references renders the claims of the '075 patent unpatentable alone or in view of the other two

Widcom information publications that further describe the Widcom machine described in the

Anderson article and the specification.  D.I. 18, Answer ¶¶ 87-90.  As established above, the

Anderson article and the VTC-56B Coder specification could have been considered by the

examiner during the reexamination in view of the other two references regardless of whether the

other references also are prior art, and Philips' failure to disclose the other two references can

support Samsung's inequitable conduct defense.  Accordingly, Philips' motion should be denied.

Philips cites 35 U.S.C. § 301 in purported support of its argument.  D.I. 22, Philips Br.

p. 5.  However, section 301 pertains to citing prior art in both original prosecution and

reexaminations, so Philips' reliance on section 301 to distinguish between original prosecution

and reexamination fails on its face.  Moreover, Philips fails to quote all of section 301, which

includes the statement that "If the person [submitting prior art] explains in writing the pertinency

and manner of applying such prior art to at least one claim of the patent, the citation of such prior

art and the explanation thereof will become part of the official file of the patent."  35 U.S.C. §

301.  Thus, section 301 itself contemplates the submission of explanatory material along with the submission of prior art.  Furthermore, nothing in section 301 precludes the submission of non-prior art materials if they assist in explaining the subject matter of prior art that has been submitted.

Philips also cites 37 C.F.R. § 1.552(a).  D.I. 22, Philips Br. p. 5.  However, the Court will note that section 1.552(a) states that the "reexamination proceeding will be examined on the basis of patents or printed publications."  *Id.*  Conspicuously absent from section 1.552(a) is any limitation to "prior art" patents and printed publications.  While Philips may wish to amend section 1.552(a) to read "prior art patents and printed publications," that is not what the section states, and section 1.552(a) is entirely consistent with the above-discussed Federal Circuit rulings and MPEP section which permit the PTO to consider non-prior art publications that further explain the subject matter of other prior art that is before the examiner.  The language in section 1.552(a) also is consistent with the above-discussed language of section 1.555(b), which defines what is "material" information for purposes of a reexamination, and which also does not impose a "prior art" limitation on the "printed publication" requirement.  37 C.F.R. § 1.555(b).

### 3. The Widcom Information Comprises Printed Publications.

Philips' motion improperly conflates the concepts of "prior art" and "printed publication."  A printed publication is simply a reference that was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it…."  *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981) (quoting *I.C.E. Corp. v. Armco Steel Corp.*, 250 F. Supp. 738, 743, (S.D.N.Y. 1966)); *see also ResQNet.Com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010) ("Public accessibility is the 'touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b).'") (quoting *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986)).  As

13

established above, the materiality requirement for printed publications in reexamination under 37 C.F.R. § 1.555(b)(1) requires that a printed publication establish a *prima facie* case of unpatentability alone or in combination with other printed publications or patents.  37 C.F.R. § 1.555(b)(1).  The rule does not state that the *prima facie* case of unpatentability be based solely upon printed publications that are also prior art under section 102(b).  *Id.*

The determination of whether a document is a printed publication is decided on a case-by-case basis based upon the underlying facts of the case.  *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004).  The Court has not yet determined whether the references that comprise Widcom information are printed publications, nor can Philips properly ask the Court to do so now because that determination turns on the specific facts of this case.  *Id.*  Rather, for purposes of this motion, which addresses pleadings whose allegations must be taken as true, Samsung's answer alleges that the references that comprise the Widcom information are printed publications.  D.I. 18, Answer ¶¶ 84, 90.

None of the cases cited by Philips stands for the proposition that a Court can determine on the pleadings the factual question of whether a particular publication was sufficiently accessible to qualify it as a "printed publication."  For example, in *In re Omeprazole Patent Litigation*., 536 F.3d 1361 (Fed. Cir. 2008), the Federal Circuit addressed this issue based upon the record developed at trial.  *Id.* at 1364-65.  Similarly, in *ResQNet.Com*, the Court determined whether the manuals in question qualified as printed publications based upon evidence produced at trial.  *ResQNet.Com, Inc.*, 594 F.3d at 865-66.  Philips cites no case that authorizes the Court to make this determination at the pleading stage.

In any event, the four references alleged in Samsung's answer as the withheld Widcom information are printed publications.  D.I. 18, Answer ¶ 84.  These references describe the

operation of the prior art Widcom machine and were disseminated or otherwise made "accessible to members of the public interested in the prior art." *Omeprazole*, 536 F.3d at 1381.

The Anderson article is a printed publication because it was published in Volume 57 of Electronics magazine.  D.I. 18, Answer ¶ 84.  Philips' motion does not dispute this.

The VTC-56B Coder specification is a printed publication because it was provided to at least one Widcom customer.  D.I. 18, Answer ¶ 84.  Philips' motion also does not challenge that this document is a printed publication.  D.I. 22, Philips Br. p. 9.[2]

The Ebrahimi expert report was produced to Philips during the *Kodak* case and included a claim chart comparing claims 3, 4, 7 and 8 of the '075 patent with the descriptions of the Widcom machine found in the Anderson article, the VTC-56B Coder specification and the Neuhauser expert report.  D.I. 18, Answer ¶¶ 84, 87.  The Ebrahimi expert report is a printed publication because the relevant portions of the Ebrahimi expert report were published on this Court's docketing system and are available to the public as an exhibit to Philips' Opposition to Kodak's Motion In Limine No. 3, docket entry number 184 in the *Kodak* case.  *Id.* ¶ 98; *Kodak* case, D.I. 184, Ex. 3.  *See, e.g., In re Lister*, 583 F.3d 1307, 1316 (Fed. Cir. 2009) (ruling that a manuscript was "publicly accessible as of the date that it was included in [] Westlaw . . . "); Kinton Decl., Ex. B, MPEP § 2128 ("An electronic publication, including an on-line database or Internet publication, is considered to be a 'printed publication' within the meaning of U.S.C. § 102(a) and (b) provided the publication was accessible to persons concerned with the art to which the document relates.").

---

[2] Samsung alleges that the VTC-56B Coder specification was a printed publication.  D.I. 18, Answer ¶ 84.  For the reasons stated above, this factual allegation is sufficient to support an inequitable conduct defense under Rule 9 and Rule 12(f).  But, to the extent the Court disagrees, Samsung should be permitted to amend its answer to allege  additional underlying evidence (continued . . .)

The Neuhauser expert report also was produced to Philips during the *Kodak* case and describes the operation of the Widcom machine.  D.I. 18, Answer ¶ 84.  It is a printed publication because it was published on this Court's docketing system in the *Kodak* case and is available to the public as exhibit 17 in Philips' Appendix of Exhibits in Support of its Motions *in Limine*.  *Kodak* case, D.I. 180, Ex. 17.[3]

### 4.  The Anderson Article And The VTC-56B Coder Specification Were Each Material To The Reexamination.

Regardless of Philips' arguments concerning the Ebrahimi and Neuhauser expert reports, Philips' motion must be denied because the Anderson article and the VTC-56B Coder specification would have been material to the reexamination of the '075 patent whether viewed independently or in combination.  Paragraph 90 of Samsung's First Amended Answer alleges that "the Widcom information," which includes both the Anderson article and the VTC-56B Coder specification, "comprises printed publications that establish ***alone or in combination*** with each other and/or in combination with the other prior art references before the examiner during the reexamination a prima facie case of unpatentability of a claim."  D.I. 18, Answer ¶ 90 (emphasis added).  Thus, Samsung's answer alleges that the Anderson article and the VTC-56B Coder specification each alone, and in combination with each other, establish a *prima facie* case of unpatentability of a claim of the '075 patent.  *See also id.* ¶¶ 87-89, 93-94.  As Samsung's Answer meets the requirements of Rule 9 and the *Exergen* case as established above, these allegations are sufficient to defeat Philips' motion.  The Anderson article itself either anticipates or renders obvious '075 patent.  *Id.* ¶ 90.

_____

regarding the nature and extent of the dissemination of this and the other references that comprise the Widcom information.

Although Samsung's assertion of the Anderson article as invalidating prior art is not limited to what is explained in Prof. Ebrahimi's prior expert report in the *Kodak* case (as Samsung was not a party to the *Kodak* case and did not retain Prof. Ebrahimi in that case), Prof. Ebrahimi's expert report includes a claim chart—which is specifically cited in Samsung's answer—that at least partially correlates the claim limitations of the '075 patent to the text, diagrams and tables found at pages 113-115 of the Anderson article.  D.I. 22, Philips Br., Ex. 1 (Ebrahami expert report), internal exhibit B-1 (claim chart), pp. 1-9; D.I. 18, Answer ¶¶ 87-88, 93-94.  Philips offers no argument as to why the Court should disregard these allegations, which the Court must accept as true on a motion to strike.  Moreover, although doing so would be to go beyond the pleadings and constitute argument on the ultimate merits of the case, Philips fails to explain how the Anderson article does not in fact invalidate the claims of the '075 patent.

The same is true of the VTC-56B Coder specification, which also invalidates the '075 patent, either alone or in combination with the Anderson article.  D.I. 18, Answer ¶¶ 87-88, 90, 93; D.I. 22, Philips Br. Ex. 1, internal exhibit B-1, pp. 1-9 (citing the VTC-56B Coder specification against claim limitations of the '075 patent).  Again, Philips offers no argument as to why or how the Court should or can disregard these allegations in the answer, nor does it argue on the merits how the VTC-56B Coder specification does not, either alone or together with the Anderson article, invalidate the claims of the '075 patent.

Moreover, as Philips itself acknowledges, a reference also is material to a reexamination proceeding if: ". . . (2) It refutes, or is inconsistent with, a position the patent owner takes in: (i) Opposing an argument of unpatentability relied upon by the Office, or (ii) Asserting an argument

---

[3] For example, a search of  "Widcom" on Westlaw, specifically on the federal district court dockets, will find the docket for the *Kodak* case, including the expert reports of Prof. Ebrahimi and Dr. Neuhauser.  Kinton Decl. ¶ 4.

of patentability." 37 C.F.R. § 1.555(b); D.I. 22, Philips Br. pp. 2, 5-6. Here, Samsung's answer alleges that page 114 of the Anderson article and pages 4 and 5 of the VTC-56B Coder specification each disclose the "deriving . . . a plurality of events" claim limitation that Philips argued was absent from the prior art during the reexamination. D.I. 18, Answer ¶¶ 92-93. Samsung's answer also alleges that page 114 of the Anderson article discloses the "assigning a code word" claim limitation that Philips also argued was absent from the prior art during the reexamination. *Id.* ¶¶ 92, 94. Samsung's answer further alleges that the non-disclosed Anderson article and VTC-56B Coder specification refute, or are inconsistent with, the positions that Philips took during the reexamination concerning the patentability of the '075 patent. *Id.* ¶¶ 95-96.

Philips' motion does not dispute that the VTC-56B Coder specification refutes or is inconsistent with Philips' arguments during reexamination. Rather, Philips simply argues that Samsung cannot rely upon the specification because it is not prior art. D.I. 22, Philips Br. pp. 6, 10-11. As established above, however, that argument is incorrect.

Philips also does not dispute that the Anderson article refutes or is inconsistent with Philips' arguments during reexamination concerning the "deriving . . . a plurality of events" claim limitation. By failing to address this allegation of Samsung's answer, Philips appears to concede that this allegation forms the basis of an inequitable conduct defense.

Philips briefly challenges Samsung's allegation that the Anderson article refutes or is inconsistent with Philips' arguments during reexamination concerning the "assigning a code word" limitation. D.I. 22, Philips Br. p. 11. Philips first incorrectly attempts to equate the scope of Samsung's allegations with a single sentence from page 114 of the Anderson article. *Id.*

However, Samsung's allegation is not so limited, and extends to additional information on page 114 of the Anderson article that Philips' motion does not address.

Philips next essentially argues that the Anderson article alone would not have refuted or been inconsistent with its arguments during reexamination, but rather that it would have been a "combination" of information that together would have taught the "assigning a code word" limitation. D.I. 22, Philips Br. p. 11. Indeed, Philips states that "[i]t is *only* the combination that is pled to disclose this claim element . . . ." *Id.* This is incorrect. Samsung's answer alleges that both the Anderson article "and" the Neuhauser report each teach the "assigning a code word" limitation. D.I. 18, Answer ¶ 94.

Philips also asserts, without citing any authority, that "only information that refutes an argument made about the 'prior art' properly considered in the reexamination need be disclosed." D.I. 22, Philips Br. p. 2. In other words, Philips essentially argues that it was free to misrepresent the state of the prior art to the examiner as long as it did not make misrepresentations pertaining to specific pieces of prior art before the examiner. This is not the law. *See* 37 C.F.R. § 1.555(b) (information is material if it refutes or is inconsistent with a position taken by the patent owner in opposing an argument of unpatentability relied upon by the PTO, or in asserting an argument of patentability). Here, Philips and its representatives made misrepresentations about the state of the prior art generally in order to overcome claim rejections and obtain the '075 patent. D.I. 18, Answer ¶¶ 92, 95-96. As Philips was precluded by law from doing so, its motion to strike should be denied.[4]

---

[4] Philips' motion includes gratuitous remarks concerning Mr. Lohse, who represented Kodak in the prior *Kodak* case and who is now one of the attorneys representing Samsung. D.I. 22, Philips Br. pp. 7-8. However, it was Philips—not Mr. Lohse—that had the duty during reexamination to advise the PTO of information material to the patentability of the '075 patent. Moreover, Philips' suggestion that Mr. Lohse's conduct somehow evidences that the Widcom information (continued . . .)

IV.     **CONCLUSION**

For the foregoing reasons, Samsung respectfully requests that Philips' motion to strike be

denied.

Dated: August 9, 2010                          Respectfully Submitted,


                                               /s/ *Francis DiGiovanni*
                                               Francis DiGiovanni (#3189)
                                               Chad S.C. Stover (#4919)
                                               **CONNOLLY BOVE LODGE & HUTZ LLP**
                                               The Nemours Building
                                               1007 N. Orange Street
                                               Wilmington, DE  19899
                                               Phone (302) 658-9141
                                               e-mail: fdigiovanni@cblh.com

                                               Mark D. Fowler
                                               Timothy Lohse
                                               **DLA PIPER US LLP**
                                               2000 University Avenue
                                               East Palo Alto, CA  94303-2215
                                               Tel:  650.833.2000
                                               Fax:  650.833.2001

                                               Richard Mulloy
                                               John D. Kinton
                                               Jesse Hindman
                                               **DLA PIPER US LLP**
                                               401 B Street, Suite 1700
                                               San Diego, CA  92101-4297
                                               Tel:  619.699.2700
                                               Fax:  619.699.2701

                                               *Attorneys for Defendants/Counterclaimants*
                                               *Samsung Electronics Co., Ltd. and*
                                               *Samsung Electronics America, Inc.*

---

was not material is belied by the fact that Philips previously told this Court in the *Kodak* case
that it believed that the primary basis of Kodak's invalidity defense was the Widcom
information.  D.I. 18, Answer ¶ 98.

<u>**CERTIFICATE OF SERVICE**</u>

I, Francis DiGiovanni, hereby certify that on the 9th day of August, 2010, a true

copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF,

which will send notification of such filings to counsel of record, and the document is

available for viewing and downloading from CM/ECF.  I also certify that a true copy of

the foregoing was sent to the following individuals via the manner of service listed:

**VIA E-MAIL AND HAND DELIVERY**          **VIA E-MAIL**

Steven J. Balick                                          Frank A. DeCosta, III
John G. Day                                               Steven M. Anzalone
Tiffany Geyer Lydon                                   Matthew A. Levy
500 Delaware Avenue, 8th Floor                Joyce Craig
P.O. Box 1150                                            FINNEGAN, HENDERSON, FARABOW,
Wilmington, DE 19899                               GARRETT & DUNNER, L.L.P.
sbalick@ashby-geddes.com                      901 New York Avenue, N.W.
jday@ashby-geddes.com                          Washington, DC 20001
tlydon@ashby-geddes.com                        frank.decosta@finnegan.com
                                                                 steven.anzalone@finnegan.com
                                                                 matt.levy@finnegan.com
                                                                 joyce.craig@finnegan.com


                                                                 /s/ *Francis DiGiovanni*
                                                                 Francis DiGiovanni (#3189)
                                                                 fdigiovanni@cblh.com